ELIZA R. P. CHRISTIAN, AN INCOMPETENT PERSON, BY GEORGE H. HOLT, HER GUARDIAN, *v.* WAIALUA AGRICULTURAL COMPANY, LIMITED, AN HAWAIIAN CORPORATION, AND JAMES L. HOLT.

No. 1840.

ARGUED AUGUST 27, 1928.                    DECIDED SEPTEMBER 7, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity to cancel a deed executed by Eliza R. P. Christian, et al., under date of May 2, 1910, to James Lawrence Holt, the ground of cancellation being that at the time of its execution Mrs. Christian was mentally incompetent. The petitioner is the guardian of the estate of Mrs. Christian. The respondents are the grantee just referred to, James Lawrence Holt, and the Waialua Agricultural Company, Limited, a corporation to which

by mesne conveyances the title acquired by James Lawrence Holt from Mrs. Christian passed. The allegations of the bill which are material on this appeal are as follows: that George H. Holt, the petitioner, is the duly appointed, qualified and acting guardian of the estate of Eliza R. P. Christian, an incompetent person; that the respondent, James L. Holt, is a son of James R. Holt and a grandson of Robert William Holt; that Eliza R. P. Christian, formerly Eliza R. P. Holt, is the daughter and sole heir of John Dominis Holt, a son of Robert William Holt; that Robert William Holt was the owner of large "properties" in this Territory and died in the year 1862; that Robert William Holt left a will which provided that the bulk of his estate should be divided into four equal parts, one part of which was to go to and become the property of his daughter, Elizabeth M. Aldrich, and that the remaining three-fourths would be "held in trust to pay the income from equal and undivided thirds thereof to each of his sons, Owen J. Holt, James R. Holt and John Dominis Holt, for their respective lives with remainder over in fee as to each undivided one-third to the heirs at law of the said three sons as they respectively should die"; that after the distribution of one-fourth to the daughter, Elizabeth, and after the payment of all debts and specific legacies, there remained in the said estate and undistributed six enumerated tracts or parcels of land aggregating in area over fourteen thousand acres; that under the provisions of the will the son, John Dominis Holt, was entitled to the income for life from an undivided one-third of all of the six parcels of land and that Eliza R. P. Christian, "the only child and sole heir at law of her father, the said John Dominis Holt, * * * became and was entitled to accede to and become the owner in fee simple of an undivided one-third interest in all of said lands upon the death of her said father and subject

only to the survival of him"; that Eliza R. P. Christian "is, was and at all times" in the petition mentioned "has been insane and mentally incompetent"; that for many years prior to 1910 the respondent Waialua Agricultural Company had used and occupied as a sugar cane plantation large portions of the six lands above referred to as a tenant under leaseholds from persons holding the legal estate in trust pending the death of the life tenant; and that in the year 1910, "becoming desirous of acquiring said lands in fee simple and more particularly of acquiring the undivided one-third in said land as to which the said John Dominis Holt was entitled to the income for life and as to which the said Eliza R. P. Christian would be entitled to the fee upon his death", the respondent corporation undertook and carried through the negotiations and transactions about to be referred to; that in the year 1910 Eliza R. P. Christian "was wholly incompetent mentally * * * and was unable to care for herself or her affairs and was then residing in Oxford, England, with her cousin, Anne Holt Kentwell, in whose care she had been for many years"; that Anne Holt Kentwell "had complete control over said incompetent person, but that she was without knowledge as to the legal status of said incompetent and concerning her inability to execute a valid conveyance of her properties; that at said time respondent James L. Holt was resident in Honolulu, Hawaii, and was on friendly terms with and related to Anne Holt Kentwell"; that the alleged incompetent was at that time twenty-four years of age and "aside from her said mental affliction was in generally good physical health and condition, whereas the said John Dominis Holt, upon whose death the vesting of the interest in fee in the said Eliza R. P. Christian alone depended, was a man of 71 years of age"; that at that time "the interest in expectancy in fee in an undivided one-third of said lands to which said in-

competent, would be entitled upon the death of her said
father was of the value of upwards of $300,000.00, and
that all of the foregoing facts and circumstances were
well known to respondent corporation", although the value
of the property "was unknown to and not disclosed to
said Anne Holt Kentwell and was of course entirely im-
possible of being understood by said incompetent"; that
the respondent corporation employed the firm of Castle
& Withington of Honolulu to act for it "in the matter of
procuring the conveyance to it of the so-called Christian
interest in said property" and persuaded James L. Holt
to endeavor to induce Mrs. Kentwell to procure the signa-
ture of the alleged incompetent to a deed of her interest
at a cost to the respondent corporation not to exceed the
sum of $40,000,—the title so obtained by James L. Holt
to be immediately transferred to the respondent cor-
poration or its appointees in trust; that the arrange-
ment between the corporation and James L. Holt
was that the negotiations were to be had with Mrs.
Kentwell and the incompetent as though Holt were
in fact purchasing the property and that the con-
veyance was to be taken in Holt's name; that in
the deed from James L. Holt to the corporation or its
appointees, transferring the title which he was to secure
from Mrs. Christian, there was also to be included a con-
veyance of the interest of James L. Holt himself in the
same lands (being his interest in expectancy as the sole
heir at law of James R. Holt) and that James L. Holt
was to receive from the corporation as consideration for
his services and for his interest in the property the sum
of $60,000; that a further sum of $20,000 was to be paid to
one John F. Colburn who was the holder of the life
interests of John Dominis Holt and James R. Holt and
was also trustee for James L. Holt for certain purposes,—
"making a total contemplated expenditure to said cor-

poration of $120,000.00 for petitioner's interest, as well as for the other interest above indicated in said lands"; that James L. Holt, having ascertained from England that "said plan might be reasonably expected to be successful", David Withington, a member of the law firm of Castle & Withington, proceeded to England, ostensibly as attorney for James L. Holt, but in fact in the interests of the respondent corporation, "in an endeavor to procure through said Anne Holt Kentwell" or otherwise "a conveyance of the said Christian interest at an expenditure to said corporation of not to exceed $40,000.00"; that in England David Withington called upon Mrs. Kentwell "in whose home was the said incompetent, Eliza R. P. Christian" and "was then and there given and did have ample opportunity for ascertaining for himself and those whom he represented the fact of said incompetency" and "was fully aware of said mental incompetency * * * at the time of the happening of all of the events which there transpired" as in the petition described; that Withington misrepresented to Mrs. Kentwell and the incompetent the value of the property under consideration and induced Mrs. Kentwell "to assist in procuring the signature of said incompetent" to the desired deed and succeeded in procuring the signature of the incompetent, "said signature being affixed by said incompetent without any knowledge or understanding of the meaning of said document or of said signature"; that the deed was not signed by any person on behalf of the incompetent as her guardian or otherwise; that the deed was signed on May 2, 1910, by the incompetent and Mrs. Kentwell, purporting to convey Mrs. Christian's interest in the land to James L. Holt, and was subsequently returned to Hawaii and was recorded in the office of the registrar of conveyances on June 23, 1910; that the petitioner "is without information as to the manner of payment" of the sum of $30,000

claimed to have been paid to Eliza R. P. Christian as the consideration for the conveyance "or as to what person said moneys were paid or as to how said moneys were used and applied"; that the sum of $30,000 "was grossly, utterly and wholly inadequate as consideration for the interest of said" incompetent, "as was well known to said respondent corporation and to its agents and representatives, and that said transaction was unconscionable and inequitable and in fraud of the rights of said incompetent"; that subsequently, by mesne conveyances, the title, if any, acquired by James L. Holt from the incompetent was transferred to the respondent corporation, always with knowledge of the circumstances under which the deed to James L. Holt was secured; that John Dominis Holt died on April 10, 1922, leaving as his sole surviving heir the petitioner, Eliza R. P. Christian, and that she thereupon became vested "with an estate in fee simple in and to an undivided one-third of all the lands" in the petition described and that the life tenancy of John Dominis Holt and his grantees thereupon terminated; that the respondent corporation is wrongfully claiming to be the owner of the petitioner's property by virtue of the deed to James L. Holt; that since the appointment and qualification of George H. Holt as guardian of the incompetent all due diligence has been used in promptly investigating all relevant circumstances and in bringing this suit; that "the value of the lawful right and interest" of the incompetent in the lands in question now held and claimed by the respondent corporation "is in an amount greatly in excess of a million dollars and that the reasonable rental for the use and occupancy of said interest in said land during the period of approximately six years which has intervened since the death of the said John Dominis Holt, and properly payable to petitioner herein, is in an amount of many times the sum of $30,000.00 with

interest since May 2, 1910"; and that the petitioner offers to credit the respondent corporation with the sum of $30,000.00 and interest from May 2, 1910, if the court thinks that justice so requires, "and in the settlement to be had herein does tender back any and all consideration which may be shown to have been paid as consideration for the conveyance of her said interest, together with the interest thereon, in the event and to the extent that this court may find herein that repayment should be made in equity and in justice."

The prayer of the petition is for a cancellation of the deed, for a reconveyance by the respondent corporation and for an accounting concerning the rents.

The answer of the Waialua Agricultural Company, Limited, in this suit was signed by the law firm of Robertson & Castle and by Messrs. Frank E. Thompson and Montgomery E. Winn and Miss Marguerite K. Ashford, as attorneys for that answering respondent. The present petitioner filed a motion that the court "do enter up its order herein disqualifying F. E. Thompson, Marguerite Ashford, M. E. Winn or any members of the law firm of Thompson, Cathcart, Beebe & Winn from acting as counsel for respondents, or either of them, in the above entitled court and cause." Affidavits were filed in support of and against the motion. The circuit judge sustained the motion and entered an order that Messrs. Thompson and Winn and Miss Ashford "be and they and each of them hereby are disqualified from appearing or in any way acting as attorneys or counsellors at law for Waialua Agricultural Company, Limited," and that "the names of said attorneys and each of them are ordered stricken as attorneys for said respondent in said cause" and the said three attorneys "are ordered to refrain from representing, aiding or in any manner whatever acting for the said Waialua Agricultural Company, Limited, in said

540

above entitled cause or in any matter having to do with or in any way related with the subject matter of said litigation." From this order the three attorneys and the corporation presented and were allowed an appeal to this court. The sole question now before us is whether they are disqualified.

Under date of March 25, 1924, the Mrs. Kentwell mentioned in the bill of complaint wrote to Mr. Ulrich, one of the attorneys now appearing for the present petitioner, a letter of which the following is a copy:

"159 Woodstock Road,
Oxford.
March 25, 1924.

"Mr. Barry S. Ulrich:
Dear Sir:
Many thanks for your letter which I have just received, for I was away for a fortnight's holiday when your letter arrived last week, and I only saw it this very moment. I should be very grateful if you would investigate Mrs. Christian's property, for since her father's death in April 1921, she did not receive a single penny until the 5th of March 1924, when the sum of $185 was sent to her, this I understand is the income that has accrued since Mr. Holt's death, and in his letter he says there will be only a small income accruing from the principal which will be sent to her. I fail to understand why this estate has dwindled so? Last year the sum of $1200 was sent to Mrs. Christian as passage money to go back to Honolulu, and as Mrs. Christian refused to go back this sum was sent back to Mr. Marx who is the attorney for The Hawaiian Trust Co. and Trustee for the Holt Estate. The sum of $250 was I believe paid to the lawyers in England (Darley Cumberland & Co.) 36 John St. Bedford Row, London, they were keeping this money for Mrs. Christian's passage to Honolulu. I think this sum, charged to Mrs. Christian, is out of order, for they did nothing for Mrs. Christian, but simply wrote to say they had $1200 in their possession for Mrs. Christian and they would book her passage at such a date she wished to sail

for Honolulu—I think both Judge Andrade and Mr. Marx have had everything to say and poor Mrs. Christian has had to eat humble pie, however I know you will do your best for her. The courts declared her as being non compos mentis according to Mr. Holt's will 'He devised and bequeathed to his son John Dominis Holt (Mrs. Christian's father) ¼ of all his estate both real and personal, the income of the same to be paid to him by his executor hereinafter named for his use and support for the term of his natural life and after the death of my said son I give devise and bequeath the said ¼ to the heirs of the said John Dominis Holt and theirs assigns, etc.'

Mr. John D. Holt sold his life interest in 1912 with Mrs. Christian. The question is 'Could Mrs. Christian sell, as she is non compos mentis, what about her children if she had any? She declares now that she does not remember of ever selling her interest and that her father has always told her that she had a large property in Hawaii that is at Waialua and Makala involving about 17000 acres. Mr. Holt and Mrs. Christian left Honolulu in 1906, since then (Mr. Holt) up to the time of his death did not know anything about the estate and no yearly report was sent to him. The Trustee did exactly as they liked and I am afraid the estate has dwindled very much. Mrs. Christian must have some money to pay her expenses and I suggested to Mr. Henry Smith to ask Mr. Marx for $30 a month but I have not heard from Mr. Smith yet. I have to clothe and feed Mrs. Christian and I thought this sum would cover all her expenses.

I am sorry that I am not able to return to Honolulu for the present for my eldest daughter is studying law at the Inner Temple and as a student of St. Hugh's College Oxford, she hopes to take her degree next year. I shall then be able to come back to Honolulu. Perhaps you would care to write to my Husband Lawrence K. Kentwell who is at present in Shanghai. I am enclosing his cards so that you will get his proper address. I feel almost certain that the Holt estate is in a great muddle and needs someone like yourself to get to the bottom and have the matter sifted. I shall be very pleased to answer any questions you would care to ask me and if possible

Mrs. Christian and I will be very pleased to come out to Honolulu in June, if you think this is absolutely necessary.

Wishing you every success,

Believe me,

Yours truly,

(Mrs.) L. K. Kentwell."

The Mrs. Christian referred to in this correspondence is the same person in whose behalf the present suit is brought.

On April 30, 1924, Mr. Ulrich, who was then in California, wrote to Mr. Eugene H. Beebe, an attorney at law who at that time was a salaried employee of Mr. F. E. Thompson (the latter then doing business under the name of Thompson, Cathcart & Beebe), a letter of which the following is a copy:

"April 30, 1924.

"Eugene H. Beebe, Esq., Attorney at Law,

Box 380, Honolulu, T. H.

Dear Gene:

I have just received a letter from Mrs. L. K. Kentwell of Oxford, England, which I enclose for your consideration.

While I was in Honolulu I made an investigation of the affairs of Mrs. Christian to whom she refers, to the extent of ascertaining that the Hawaiian Trust Company, for whom Mr. Marx is acting in the matter, is acting as Trustee under a will apparently providing for the distribution of the income of a certain portion of the trust estate to Mrs. Christian. It would seem that things are in such a condition that the corpus of this portion of the estate may now be distributed to her, and Mr. Marx indicated to me that this would be done as soon as there was any person whom the Trust Company could be assured would be legally authorized to receive distribution on her behalf. It seems that Mrs. Christian has for some time been incompetent mentally and in care of Mrs. Kentwell. Mrs. Kentwell is of the opinion that she was appointed guardian of the estate and person of Mrs. Christian by proceedings in Hawaii. Such investigation as I was able to make while in Hawaii disclosed no such proceedings,

although my search was very hurried, and it may be that they are of record.

Apparently there have been certain conveyances of real property of a very considerable value, either by the Trustee without authority, or by certain other beneficiaries under the will, which properties should now be a part of Mrs. Christian's share of the so-called Holt Estate. Mr. Marx seemed somewhat nervous and uncommunicative when I attempted to discuss this feature of the matter with him, and I would not be surprised if it might be found to be possible to very materially increase the properties which must eventually be distributed to Mrs. Christian, or to her guardian. If there is no guardian in Hawaii, I would advise proceedings looking to the appointment of Mrs. Kentwell as guardian in England.

I think any reasonable fee on a contingent basis would meet with the approval of Mrs. Christian, or rather, of her guardian either appointed or to be appointed.

If your investigation indicates that there is anything in this, would you be willing to undertake the matter on the usual basis of two-thirds to you and one-third to me?

If it develops that there has been no appointment of a guardian, and that the matter is worth undertaking, it would be well that the matter of the appointment of a guardian be undertaken first, so that we may have someone in authority with whom we may deal in the matter of a fee.

Very truly yours,

BSU :L                                   Barry S. Ulrich"

Under date of May 29, 1924, Mr. Beebe replied to Mr. Ulrich as follows:

"May 29, 1924.

"Barry S. Ulrich, Esq.
First National Bank Bldg.
San Francisco, Cal.

Dear Barry:        *Re: Estate of Eliza R. P. Christian*

I have delayed answering your letter relative to the above matter until such time as I could advise myself as to the true facts in this apparent steal.

From our examination of the meager files in the whole estate and from all files that we have been able to locate,

it appears that Mrs. Christian was born in the year 1887, and was married on January 26, 1903, to Albert Christian. Later Mrs. Kentwell, as her next friend and guardian, brought an action to have this marriage annulled upon the ground that Mrs. Christian was feeble and weak-minded. Judge Gear, however, held that there was not a sufficient showing of such weak-mindedness to warrant an annulment of the marriage.

It is apparent that Mrs. Christian was at one time adjudged mentally incompetent, and Mrs. Kentwell appointed her guardian. This, we glean from Henry Smith, Clerk of the Court, and he further states that all of the records in this guardianship matter were lost by Judge Gear upon an occasion when he took them with him to San Francisco.

The files further show through a letter written Messrs. Frear, Prosser, Anderson & Marx by Messrs. Darley, Cumberland & Company, London solicitors, the letter being dated February 26, 1923, that Mrs. Christian is mentally normal, and Mrs. Christian by an instrument signed and acknowledged March 15, 1923, appointed Henry Smith her attorney-in-fact.

I am enclosing herewith a record showing the history of the whole estate and its present condition. When this history has satisfied your purposes, will you return the same to me, as a copy has not been made. From the examination of the enclosed statement, it will be apparent that there is something frightfully rotten in Denmark.

Your suggestion as to how the fee should be divided in the event litigation is undertaken in this matter is entirely satisfactory.

With kindest personal regards to Mr. Neylan and your family, I am

EHB:H                                              Sincerely,
Encl.                                              E. H. B.''

On June 30, 1924, Mr. Ulrich wrote to Mr. Beebe:

"June 30, 1924.

"Eugene H. Beebe, Esq.,
Thompson, Cathcart & Beebe,
Box 380, Honolulu, T. H.
Dear Gene:

On my return from New York City the other day, I found your letter of May 29th referring to the matter of the interest of Eliza R. P. Christian in the Estate of Robert William Holt, awaiting me.

From my examination of memorandum which you have forwarded, I gather that in main the following is the situation, although I am not clear on all points:

It would seem that Robert William Holt died in 1862 and by will left his entire estate in trust to pay the income of one-quarter of it to each of his four children during their life, the remainder being left, one-quarter, to the heirs of each of the four children respectively, their interest to vest on the death of their parent. Our client, Mrs. Eliza R. P. Christian, is the only natural child, has been determined in legal proceedings, to be the only heir at law of John Dominis Holt, one of the four children above referred to, and as such under the terms of the will should succeed to one-fourth of the estate of the original testator, her father John Dominis Holt being now deceased. It would seem that this should be true irrespective of any attempted conveyance made by John Dominis Holt during his lifetime and irrespective of any provisions in his will.

I gather in a general way from your memorandum that the conveyance of the interest of John Dominis Holt to James L. Holt, joined in by John F. Colburn as Trustee, by deed of July 1, 1902, has been generally considered as a conveyance of something more than what his interest really was, namely, a right to income for life. If it was merely a conveyance of his interest, we of course need not worry. If it purported to be a conveyance of a fee, it would seem that James L. Holt in all probability would take with notice of the limitation on the powers of the trustee. Nor do I see how the grantees could very well hope to succeed in urging a claim of adverse possession,

in view of the fact that the life tenant would have the right of user during his lifetime and any occupancy would only become adverse as to the remainderman after the death of the life tenant, which apparently occurred only a couple of years ago.

It would certainly seem that there will be ample room for an attempt either to recover the original estate from present grantees, or to require reimbursement at the hands of the trustee. I do not think at the present writing that we would be bound by the approval of the annual accounts, particularly in view of the fact that our client's interest until 1922 had not vested, and especially if she was laboring under disability and not represented by her guardian.

As to immediate steps to be taken, I am writing to Mrs. Kentwell and asking for two things. In the first place, a revocation of the power of attorney to Henry Smith and the appointment of myself as attorney-in-fact, to be available in the event that it be deemed advisable to proceed upon the theory that Mrs. Christian is now competent. If she has joined in any conveyance of her own rights, I would be loath to adopt such a course, but would want to insist on such showing as could be made of the fact of incompetency and of the loss of the records establishing that fact. In the second place, I am suggesting if in fact Mrs. Christian is now incompetent, that Mrs. Kentwell immediately have herself appointed her guardian by proceedings in England.

I rather imagine that if we undertake the matter, it will have to be upon a contingent basis, inasmuch as neither Mrs. Kentwell nor Mrs. Christian seem to have funds at the present time. I am sure that they will agree to any reasonable suggestion along these lines.

I am returning your memorandum pursuant to your suggestion.

I would suggest that the matter of the conveyance of July 1, 1902, be investigated very carefully, and that a statement be made from the records showing, as nearly as possible, exactly the portion of the estate left by Robert William Holt, which should now vest in Mrs. Christian, assuming that no conveyances affecting anything except-

ing the interest of the life tenant have been made. This will give us a basis on which to start, and in the light of which we can consider the actions of the various trustees down to the present time.

When you have succeeded in getting the matter into a little more definite shape, you may have some suggestions to make as to the extent of the fee which should be charged, assuming that the matter will have to be handled on a contingent basis in the light of the information which you have at hand, if you feel that your investigation justified undertaking it on such a basis.

BSU :L                              Very truly yours,
Encl.                                     Barry S. Ulrich."

Next in order in this correspondence was a letter from Mr. Ulrich to Mr. Beebe, dated December 1, 1924, reading as follows:

"December 1, 1924.

"Eugene H. Beebe, Esq.,
Attorney at Law,
Box 380, Honolulu, T. H.
Dear Gene:

In connection with the matter of the claim of Mrs. Christian against the so-called Holt Estate, I find myself in a very embarrassing position and am writing you frankly with a view to seeing if you would not be willing to help me out of it.

I have lately been in receipt of many letters and recently an urgent cablegram from the clients in England. As you have doubtless determined from your investigation of the matter so far, the case is one which does not offer any definite promise of substantial reimbursement and appears to be one of those cases which may require work out of all proportion to the remuneration which may possibly be expected. The client has no money and the possibility of getting any seems to be highly conjectural. It would seem in short to be the kind of a case that your office might well be glad to be rid of.

While nothing would please me better than to be able to work with you personally in this or in any other matter, you can well appreciate that the present feeling between

the heads of our respective offices will make satisfactory negotiations between us very difficult and embarrassing to both of us. It has occurred to me that you might indeed prefer that I conduct further negotiations with respect to the matter through other local counsel. If this were done, I am inclined to believe that it would relieve us both of a somewhat embarrassing situation.

No definite agreement has yet been reached with the client, and in fact there seems to be considerable doubt as to whether the client is competent to make an agreement.

Charlie Hite has handled some matters for me there and I for him here, and I am taking the liberty of writing to him regarding the matter, so that in the event that you agree with me, he may undertake the Honolulu representation of Mrs. Christian's interests.

As the matter appears now there will be nothing that can be done in Hawaii for some time, and in any event not until Mrs. Christian's status has been definitely determined.

I do not know that I have sent you anything that would be of value to Charlie, but if I have I am sure that you will be able to let him have it.

With kindest regards to yourself and to Marie, I am

Sincerely yours,

BSU:L Barry S. Ulrich."

To this Mr. Beebe replied on December 10, 1924, as follows:

"December 10, 1924.

"Mr. Barry S. Ulrich,
Attorney at Law,
First National Bank Bldg.,
San Francisco, Cal.

Dear Barry:

As suggested in your letter of December 1st I have turned over to Charlie Hite everything I have regarding Mrs. Christian's claim against the Holt estate. I assure you I am very glad to do this because of the strained relationship existing between the heads of our various firms.

I have been intending for some time to write you suggesting that I be relieved from any further connection with the matter and had thought of turning the papers over to Judge Coke feeling that you would perhaps like to have him handle this end of the controversy.

With kindest personal regards to Evelyn and yourself, I am

Sincerely yours,

EHB :S                                    EHB"

There was no further correspondence until September 11, 1925, when Mr. F. E. Thompson wrote to "Hite & Ulrich" as follows:

"September 11th, 1925.

"Messrs. Hite & Ulrich,
Honolulu, T. H.
Gentlemen:    *Re: Estate of Eliza R. P. Christian.*

In looking over the file in the marginal matter, I find that on December 1st, 1924, your Mr. Ulrich wrote our Mr. Beebe to the effect that due to the somewhat strained entente cordial then existing between Mr. Ulrich's employer, Mr. Neylan, and myself, it would be more congenial perhaps if we eliminated ourselves from the picture and suggested that the matter be turned over to you. For reasons obvious to your Mr. Ulrich, I concur in his conclusion although on different grounds, and now propose either that you handle the matter entirely or that we handle it that way. Some mutual satisfactory arrangement in regard to the fees can, I am sure, be arrived at between your Mr. Hite and the writer. Our daily cards show considerable work done by our organization between May 7th and December 10th, 1924.

Very truly yours,

FET-r.                            F. E. Thompson."

Mr. Hite replied on September 14, 1925, as follows:

"Sept. 14, 1925.

"Mr. F. E. Thompson,
Honolulu, T. H.
Dear Mr. Thompson:

I acknowledge receipt of your favor of the 11th in the

matter of the estate of Elizabeth R. P. Christian and apologize for failing to answer same sooner.

According to my records and diary Mr. Ulrich wrote down in December to your Mr. Beebe suggesting that the entire matter be turned over to me. Of this I had no knowledge until Mr. Beebe, acting in accordance with this suggestion, caused the file in the case to be sent over to me.

Since this time, working in conjunction with Mr. Ulrich, I have gone forward with the matter and now have it in such shape as to be practically ready for court action thereon. The matter of such charges as you might care to assess, if it ever occurred to me, was probably dismissed from my mind by the thought that you had sent Mr. Ulrich your charge after your withdrawal from the case last December. In any event my suggestion with respect to any charge you may make is that you send to me your bill made out against Mrs. Christian, which I will at once take up with her.

I regret that this matter was not taken up with you before and am sure you will now appreciate why I did not do so.

Yours very truly,

CMH:M                                   Chas. M. Hite."

On January 14, 1926, Mr. Thompson wrote to Mr. Hite as follows:

"January 14th, 1926.

"Charles M. Hite, Esq.,
Honolulu, T. H.
My dear Charlie:

In looking over the matter of the Estate of Elizabeth R. P. Christian referred to in your personal letter of September 14th, 1925, to me, I gather from the file that you have the matter on a contingent basis and that it came to our office under that understanding.

Under the circumstances, why not wait until the table is spread before we commence to eat?

Very truly yours,

FET-r                                   F. E. Thompson."

On January 22, 1926, Mr. Hite wrote to Mr. Thompson as follows:

"January 22, 1926.

"Mr. Frank E. Thompson,
Attorney at Law,
Honolulu, T. H.
Dear Mr. Thompson:—

I acknowledge receipt of your favor of January 14th, which I found waiting for me upon my resuming work here in the office yesterday morning.

Mr. Ulrich and I have received no fees as yet in the matter referred to and it is with this in mind that I will undertake to see to it that a reasonable charge for services rendered by you prior to your withdrawal from and turning over of the case to me in December of 1924, be recommended paid.

Yours very truly,
CMH:m                                    Chas. M. Hite."

As appears from the above recital, Mr. Beebe was at the time of the correspondence with Mr. Ulrich a salaried employee of Mr. F. E. Thompson and not a partner of the latter. Subsequently, however, and prior to the institution of this equity suit, he became a partner of Mr. F. E. Thompson and Mr. Montgomery Winn. Miss Ashford is and at the time of the correspondence was a salaried employee of the same firm of Thompson, Cathcart, Beebe & Winn. The appellants do not contend in this court that even though Mr. Beebe is disqualified to act for the Waialua Agricultural Company they may nevertheless not be so disqualified. It seems obvious that if their present partner, Mr. Beebe, accepted employment as one of Mrs. Christian's attorneys in 1924 with reference to the same subject matter involved in the present suit, they, like him, are not at liberty to act now for Mrs. Christian's opponent, the Waialua Agricultural Company, even though at that time he was merely a salaried employee of Mr. Thompson, one of the members of the present firm. One material question, therefore, is whether, by reason of the correspondence of 1924, Mr. Beebe was

552

engaged as one of the attorneys to protect the interests of Mrs. Christian.

Mr. Ulrich, prior to writing his first letter to Mr. Beebe, was an attorney duly engaged to represent Mrs. Christian's interests. In her letter of March 25, 1924, Mrs. Kentwell very definitely wrote to Mr. Ulrich: "I should be very grateful if you would investigate Mrs. Christian's property", giving her reasons for the request. She added, by way of expressing the confidence which she felt in the attorney whom she was engaging, "I feel almost certain that the Holt estate is in a great muddle and needs someone like yourself to get to the bottom and have the matter sifted". He was authorized by that letter to render professional services in behalf of Mrs. Christian, to-wit, the investigation of what to a layman appeared to be a "muddle" and the ascertainment of what remedies might be available to Mrs. Christian. Mr. Ulrich at that time resided in California. The records and documentary evidence bearing upon Mrs. Christian's rights and upon any wrongs that had been done to her were by him thought to be in Honolulu and it appeared to him necessary to have associated with him a local attorney who could investigate the facts at this end. So he wrote to Mr. Beebe the letter of April 30, 1924, transmitting the original of Mrs. Kentwell's letter. He wrote that he had made a partial investigation of the affairs of Mrs. Christian and informed Mr. Beebe of what that investigation tended to show. He surmised that "it might be found to be possible to very materially increase the properties which must eventually be distributed to Mrs. Christian or to her guardian" and advised that "if there is no guardian in Hawaii", proceedings should be taken "looking to the appointment of Mrs. Kentwell as guardian in England". He said that he thought any reasonable fee on a contingent basis would meet with the approval of Mrs. Christian,

or rather of her guardian, either appointed or to be appointed, and asked: "If your investigation indicates that there is anything in this, would you be willing to undertake the matter on the usual basis of two-thirds to you and one-third to me?" Upon receipt of this letter Mr. Beebe, with the aid of Mr. Jenkins, an attorney who at that time was also a salaried employee of Mr. F. E. Thompson, conducted an investigation into the facts. While this investigation was of a preliminary nature, he felt justified in his letter of reply of May 29, 1924, in conveying to Mr. Ulrich the view that in the matter under investigation there had been "an apparent steal" and more definitely in a later part of the letter the statement that "from an examination of the enclosed statement it will be apparent that there is something frightfully rotten in Denmark". He closed the letter by saying: "Your suggestion as to how the fee should be divided in the event litigation is undertaken in this matter is entirely satisfactory." This letter of May 29, 1924, constituted in itself an acceptance by Mr. Beebe of the employment as attorney which was proffered to him by Mr. Ulrich in the letter of April 30. It is true that there were elements of uncertainty as to what the attorneys could do or would do. Litigation might follow or it might not. Mrs. Christian might be found to be compos mentis at that time (early in 1924) and able to negotiate in person with the two attorneys as to the terms of their compensation or it might be found that she was then non compos mentis and that a guardian already appointed or to be appointed should represent her in the contract relating to fees. But Mr. Beebe's reply of May 29 to Mr. Ulrich's offer of April 30 made it clear that thereafter Mr. Beebe, like Mr. Ulrich, was representing and acting for the interests of Mrs. Christian, first in ascertaining whether and to what extent what was hers of the Holt estate had not been delivered

to her or had been taken away from her and next, if they should find that she had been wronged in some way, in determining what litigation would be appropriate by way of securing a remedy in her behalf. It is true, also, that the nature, of the fees to be received by the two attorneys was at that time undetermined. They might prove to be in stated amounts or they might prove to be contingent; but whatever they might prove to be, the two letters showed an agreement that as between the attorneys themselves Mr. Beebe would be entitled to two-thirds of the compensation and Mr. Ulrich to one-third. The mere fact that the nature and the amount of the compensation for professional services were left undetermined does not militate against the conclusion that the contract of employment had come into existence and that Mr. Beebe thereafter was to be found aligned on the side of Mrs. Christian in whatever legal controversies might follow by way of securing to her a restoration of the lands and other property left to her by the will of Robert William Holt and which Mrs. Kentwell thought had "dwindled so".

Feeling, as he had a right to do, that Mr. Beebe had accepted the employment, Mr. Ulrich in his next succeeding letter of June 30, 1924, discussed with Mr. Beebe somewhat more in detail the facts as thus far ascertained by them and the possibilities of recovery and returned to Mr. Beebe in accordance with the latter's suggestion the memoranda which had been prepared, as a result of his work and that of Mr. Jenkins, showing facts bearing upon Mrs. Christian's rights. Mr. Ulrich in the same letter recommended further careful investigations. He invited at the same time suggestions from Mr. Beebe "as to the extent of the fee which should be charged".

Five months later, on December 1, 1924, in a letter to Mr. Beebe, Mr. Ulrich spoke of an urgent telegram which he had received from *"the clients* in England". He

referred to the case as one which did not "offer any definite promise of substantial reimbursement" and as one "which may require work out of all proportion to the remuneration which may possibly be expected", said "the client has no money and the possibility of getting any seems to be highly conjectural" and added that "it would seem in short to be the kind of a case that your office might well be glad to be rid of". He spoke also of "the present feeling" existing "between the heads of our respective offices" and suggested that "satisfactory negotiations between us" would be "very difficult and embarrassing to both of us". He said that it had occurred to him that Mr. Beebe "might indeed prefer that I" (Mr. Ulrich) "conduct further negotiations with respect to the matter through other local counsel", meaning in Honolulu. He informed Mr. Beebe that Mr. Charles Hite of Honolulu would undertake the work if Mr. Beebe should wish to be relieved of it. In reply Mr. Beebe said that he was "very glad to do this because of the strained relationship existing between the heads of our various firms." He "turned over" to Mr. Hite "everything I have regarding Mrs. Christian's claim against the Holt estate" and so informed Mr. Ulrich. Mr. Beebe said in the same letter that he had been "intending for some time to write" to Mr. Ulrich "suggesting that I be relieved from any further connection with the matter" and adding that he "had thought of turning the papers over to Judge Coke, feeling that you would perhaps like to have him handle this end of the controversy".

These two letters emphasize the correctness of the view that on May 29, 1924, Mr. Beebe accepted the employment as an attorney for the protection of Mrs. Christian's interests. Both attorneys, in these letters of December 1 and December 10, 1924, treated the matter as though there had been a preexisting contract of employment between

556

attorneys and client. The one suggested and the other acquiesced in the suggestion that Mr. Beebe's employment be terminated by his withdrawal from the case and by his surrendering the necessary papers to Mr. Hite. Mr. Beebe acted in conformity with that acquiescence by transferring the papers to Mr. Hite.

In his letter of September 11, 1925, Mr. Thompson states the facts to be that "our daily cards", meaning the daily cards kept in his office, "show considerable work done by our organization between May 7th and December 10th, 1924", (May 7 being the date of the receipt by Beebe of Ulrich's letter of April 30, 1924, and December 10 being the date of Beebe's letter wherein he consented to withdraw). This also strengthens the view that Mr. Beebe and his associates understood that he was engaged as an attorney for Mrs. Christian. The work was done for her obviously because he was acting as attorney on her behalf.

In the same letter of September 11, 1924, Mr. Thompson says that "some mutual satisfactory arrangement in regard to the fees can, I am sure, be arrived at between your Mr. Hite and the writer",—showing that he felt that the work done by Mr. Beebe and his associates in Mr. Thompson's office prior to his voluntary withdrawal from the case was such as to merit compensation; and he claimed that compensation. This would not in itself, of course, create an acceptance or contract of employment if there had been none in the earlier stages of the correspondence, but it serves to show the understanding of Mr. Thompson at that time that there had been such employment. The subsequent letters between Mr. Thompson and Mr. Hite merely reiterate the belief of both sets of attorneys that Mr. Beebe had accepted the employment and had rendered services thereunder which were deserving of compensation, even though the attorneys seemed perhaps to disagree as to the nature and the extent of that compensation.

The contention that, even though it be found that Mr. Beebe accepted employment on behalf of Mrs. Christian, it was in a matter relating to "the Holt estate" and not with reference to the subject of the present equity suit, cannot be sustained. In its inception, during the days of the earlier correspondence between the attorneys, neither Mr. Ulrich nor Mr. Beebe knew with definiteness or certainty just what wrongs Mrs. Christian had suffered or just what remedies were available to her. They did know, however, that the rights, whatever they were, arose in Mrs. Christian's behalf under the will of Robert William Holt. They knew that Mrs. Kentwell, who was interesting herself on behalf of Mrs. Christian, felt that the latter had not received all that she was entitled to under the will and that, as related by Mrs. Kentwell to Mr. Ulrich and through him to Mr. Beebe, Mrs. Christian believed "that she had a large property in Hawaii that is at Waialua and Makala involving about 17,000 acres". They knew from the same source that John Dominis Holt sold his life interest jointly with Mrs. Christian and that Mrs. Kentwell had asked the pertinent question whether Mrs. Christian could sell "as she is non compos mentis". They also knew that Mrs. Kentwell wished them to "investigate Mrs. Christian's property". They also knew that Mrs. Kentwell had said that she felt "almost certain that the Holt estate is in a great muddle and needs someone like yourself" (Mr. Ulrich) "to get to the bottom and have the matter sifted". This was a broad commission. It was in effect a request, *inter alia,* for an investigation as to what had become of the 17,000 acres at Waialua and at Makaha and a request for an investigation of the whole "muddle" and for the taking of such steps as might be appropriate for correcting any wrongs that might be discovered. Clearly there was no limitation in the employment of the attorneys to a consideration of the mere matter

of proceedings against the trustees under the will. An investigation might result in finding that it was not the trustees but others who were responsible for the loss of the Waialua lands. In that event the proceedings would be not against the trustees, but against those who might be found to have received the lands illegally.

So, also, the fact that Mrs. Kentwell in her letter said that the sale by Mrs. Christian was in 1912 did not limit the employment of the attorneys to a consideration of a possible deed executed in 1912. If they found such a deed, executed by Mrs. Christian in 1910, at a time when she was non compos mentis, their duty to proceed to secure a remedy would be clear. The precise date of the deed was not a circumstance material for present purposes.

The fact, if it was a fact, that at the time of the letters of April and May, 1924, Mrs. Christian was non compos mentis and could not herself employ any attorneys and that Mrs. Kentwell had no authority as guardian or otherwise in a representative capacity to employ counsel on behalf of Mrs. Christian, cannot operate to release Mr. Beebe from his duty to Mrs. Christian. Mrs. Kentwell requested the performance of the professional services (for the protection of the interests of Mrs. Christian) and at that time she (Mrs. Kentwell) was the employer, the contract being subject to adoption or ratification on the one hand or to rejection or termination on the other hand (a) by Mrs. Christian if she was mentally competent or (b) by the guardian of Mrs. Christian, appointed or to be appointed, if she was mentally incompetent. Mrs. Kentwell was capable of entering into a contract for the protection of the interests of her relative, Mrs. Christian.

Mr. Beebe having, as we find, accepted the employment by his letter of May 29, 1924, it is immaterial whether or to what extent he received communications of a confidential nature from his client or from those acting

in her behalf.[⁸] The principle which forbids an attorney who has become engaged to represent a client from thereafter appearing on behalf of the client's opponent applies equally even though during the continuance of the employment nothing of a confidential nature was revealed to the attorney by the client. *Pierce* v. *Palmer*, 31 R. I. 432, 448, 449. The same prohibition applies when his knowledge of the facts has been gained solely from public records. *In re Cowdery*, 69 Cal. 32, 64, 65. It will be unnecessary to consider, therefore, to what degree, if at all, Mr. Ulrich's letters to Mr. Beebe contained disclosures of a confidential nature.

It need scarcely be added that, within limitations and with apparent exceptions, not material to this case, "it is the general and well settled rule that an attorney who has acted as such for one side may not render services professionally in the same case to the other side, nor in any event, whether it is in the same case or not, may he assume a position hostile to his client and one inimical to the very interests he was engaged to protect unless he is expressly authorized so to do; and it makes no difference in this respect whether or not the relation itself has been terminated, for the obligation of fidelity and loyalty still continues." 6 C. J. 619, 620; *In re Humphreys, et al.,* 15 Haw. 155, 160; *In re Boone*, 83 Fed. 944, 952. This principle is not combated by the appellants, their defense being merely that the prior employment did not exist.

The order appealed from is affirmed.

*B. S. Ulrich* (*Ulrich & Hite* on the brief) for petitioner-appellee.

*M. E. Winn* (*F. E. Thompson, Marguerite K. Ashford* and *Robertson & Castle* with him on the briefs) for appellants.