Harlan DEUPREE, Plaintiff in Error,

v.

Chas. H. GARNETT and W. K. Garnett, Defendants in Error.

No. 35744.

Supreme Court of Oklahoma.

April 6, 1954.

Rehearing Denied Sept. 14, 1954.

Application for Leave to File Second Petition for Rehearing Denied Dec. 14, 1954.

Gilliland, Withington, Shirk & Clifford, Oklahoma City, for plaintiff in error.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This is an action by a firm of attorneys against another attorney for attorney's fees. The undisputed facts comprising the background of the controversy are as hereinafter related.

Prior to 1941 one Clarence L. Westcott had been interested jointly and equally with persons by the names of M. B. Oberlee, W. S. Nelson, B. St. Denis and O. A. R. Samuelson, in the development for oil and gas purposes, of a large tract of United States Government land in Freemont County, Wyoming. The oil and gas lease from the Government named only Westcott, as lessee. The rental, whose payment was necessary to keep the lease from expiring, was due October 1, 1941. A few weeks previous to this date, Westcott, who lacked the necessary funds to pay the rental and was no longer in close contact with his fellow joint adventurers, being scattered, as they were, in several different states, came to Plaintiff in Error, who, in the trial court was, and will hereinafter be referred to as, defendant, at Oklahoma City, and employed him to take charge of the lease matter and salvage whatever he could from it for the owners, promising that he would be paid a liberal fee for his services out of what was salvaged. Defendant, after accepting said employment on said terms, wrote all of the other joint adventurers above named except Samuelson (whose address he and his client did not know), asking them to forward the necessary funds for the payment of the rental. St. Denis and Nelson forwarded to defendant enough money to pay their shares, and, as the rental paying date had almost arrived, defendant, without waiting for any further replies or remittances, advanced the rest of the needed funds himself and sent the entire sum to Wyoming in time to keep the lease alive. Later he was reimbursed for that part of the rental he had advanced, by St. Denis and Nelson. Oberlee never forwarded his share, but finally, in answer to defendant's previous letters, wrote him from Kansas City of his unwillingness to advance the funds necessary to pay Westcott's and Samuelson's shares of the rental without "a better understanding" as to the security he would be furnished for such advancement.

Approximately six or eight months later Westcott came to defendant's office where he obtained a form of the lease's assignment that defendant had drawn for him and he had previously executed, with the name of the assignee left blank, and thereupon inserted therein St. Denis' name as assignee and mailed it to him. Thereafter, defendant and St. Denis, working together, were successful in persuading the Sinclair Wyoming Oil Company to purchase the lease, paying a bonus of $2,000 and reserving to St. Denis, as vendor, a 4% overriding royalty.

After said sale of the lease, St. Denis and Nelson decided they would exclude Oberlee and Samuelson from any interest in the bonus and overriding royalty and then take 40% each for themselves, but would allow Westcott his 20%. Defendant, as Westcott's attorney, protested that even though Westcott had contributed no money to the rental payment, he should share equally in the lease with St. Denis and Nelson. After much negotiation by correspondence, the differences between the three were resolved by an agreement that Westcott should be allowed a 30% interest in the bonus and overriding royalty, with St. Denis and Nelson keeping 35% each. This agreement was reduced to writing by defendant but it was not put into force until September 26, 1946, because a short time previously Westcott had been adjudged mentally incompetent and his wife, Mary Edna Westcott, had been appointed his guardian and the Order from the guardianship court approv-

ing the agreement and her execution of it on his behalf was not entered until that date.

·In the meantime, the lessee, Sinclair Wyoming Oil Company, had obtained production on the lease in 1945 and said lease had been communitized for development with an adjoining one. Under the communitization plan, the percentages of said area's production which the three associates were to have were: 1.4% each, for the St. Denis and Nelson interests, and 1.2% for the Westcott interest. Delivery of the proceeds of these interests in the production from the lease to said parties was prescribed in a division order to the oil company that specified checks for Westcott's share of the production should be forwarded to him in care of defendant. When defendant received the first of Westcott's royalty checks and notified Mr. and Mrs. Westcott of its arrival, they came to his office where they gave defendant one-sixth of its proceeds and. are said to have orally agreed that he would receive the same proportion of all future checks as payment for the services he had rendered them in the matter. Later when Westcott came to defendant's office on another occasion, defendant suggested that he execute and deliver to him a formal written assignment of one-sixth of the Westcott 30% interest, but Westcott angrily refused. The Westcotts then proceeded to employ Messrs. Halley and Douglas to represent them, and these attorneys made demand upon defendant for all of Westcott's papers in his possession. Also, through these new attorneys, Mr. and Mrs. Westcott refused to pay defendant any further fee. Thereupon, defendant filed a claim in Westcott's guardianship proceedings for payment for his services in the sum of one-sixth of Westcott's 30% interest or 5% of the 4% overriding royalty hereinbefore described. Later, on July 5, 1946, defendant sought to establish his right to such alleged interest by instituting Cause No. 113,316, entitled "Harlan Deupree v. Mary Edna Westcott, guardian of the person and estate of Clarence L. Westcott, Incompetent",

in the District Court of Oklahoma County. It was shortly thereafter that the firm of attorneys who, in the trial of the present action, were, and in this opinion will be referred to as, "Plaintiffs", entered the picture by being employed through one of its members, Charles H. Garnett, to represent defendant in said action against the guardian, Mrs. Westcott. After plaintiffs' employment as defendant's attorneys in that litigation, a settlement was reached whereby defendant was to get 1/10th of Westcott's 30% interest or 3% of the 4% overriding royalty, instead of the 1/6th or 5% he had claimed. This settlement was incorporated in an agreed Journal Entry of Judgment entered and filed in Cause No. 113,316, supra, on May 9, 1947. Said judgment decreed, among other things, that Mrs. Westcott, the guardian, execute and deliver to defendant, as plaintiff therein, "a proper and legally sufficient assignment of an undivided 3% interest" in Westcott's interest in the overriding royalty. Thereafter, in accord with said judgment, said guardian, on May 26, 1947, executed an assignment to defendant of the interest specified in said judgment, and 3 days later, Charles H. Garnett, to whom we will hereinafter refer by use of the single word "Plaintiff", forwarded to the oil company said assignment, together with a certified copy of the guardianship court's order authorizing and approving it. Subsequently, after correspondence between the oil company and plaintiff extending over more than a month, during which various requirements made by said company were met, apparently to its satisfaction, defendant received from it his first royalty check on August 2, 1947. According to his testimony defendant thereupon went to the plaintiff law firm's office and offered to pay plaintiff one-sixth of said check's proceeds on plaintiff's fee for representing him.

·In the meantime, however, plaintiffs had recognized from the information they had obtained while representing defendant, that two of the original joint adventurers in the acquisition of the lease, Oberlee and Samuelson, still had

an interest, equitable, or otherwise, in the benefits from the sale of said lease, which, as hereinbefore related, without their consent, St. Denis, Nelson and Westcott had divided among themselves. Plaintiffs then contacted Oberlee by mail and sent another attorney, who had formerly been associated with their firm, to California to locate and contact Samuelson As a result, plaintiff obtained employment from Oberlee and Samuelson to represent them in litigation to establish their interest in the bonus money and 4% overriding royalty. In the suit that was thereafter filed in Federal Court in Wyoming to establish this interest, among other relief prayed for by Oberlee and Samuelson, and other complainants therein, not now necessary to mention, plaintiff represented them as one of their attorneys. On August 2, 1947, a summons was issued to defendant herein as a defendant in that Federal Court case.

When defendant went to plaintiff's office to make the payment on the latter's firm's fee for representing him against the Westcott guardian, as hereinbefore mentioned, plaintiff told him to keep the entire proceeds from that first royalty check he had just received and wait until the Wyoming Federal Court case was disposed of before settling the matter of attorney's fees with him. After the Federal litigation in Wyoming was finally determined, with defendant's interest being preserved to him and title thereto confirmed in him, he refused to pay plaintiffs any fee whatsoever for their previous representation of him. They thereupon filed the present action in 1951 to collect it. In their pleadings they alleged, among other things, that defendant had orally agreed to assign them, in payment for their services, a one-sixth of his interest in the overriding royalty under the Wyoming lease, and prayed the court to enforce said agreement. In the alternative, they further pleaded that their services were reasonably worth the sum of $7500 in cash and prayed for judgment against defendant in that amount. Defendant's theory of defense, in material substance, was

that he did not owe plaintiffs any fee as his attorneys because they had violated the duties and obligations of an attorney to his client while representing him, by using confidential information obtained from his private files to obtain new clients whose interests were adverse to his and to "stir up" litigation in Wyoming against him. Defendant maintained that for this reason, and for the further reason that they abandoned their employment by him before completing the work they were employed to do, they forfeited all right they may have had to any fee for the services they did perform. He also pleaded that any oral agreement he may have entered into to assign plaintiffs one-sixth of his interest in the overriding royalty was void because in violation of the Statute of Frauds, 15 O.S.1951 § 136. He added to his answer a cross-petition in which he alleged that because of plaintiffs' wrongful and unethical conduct he had been compelled to expend money for trips to Wyoming and a large amount of "time and labor" in defending himself against the Wyoming litigation, for which he prayed judgment against plaintiffs in the amounts of $300 and $2500, respectively.

The cause was tried to a jury and, after demurrers to the evidence and motions for a directed verdict had been interposed by both sides, the court refused various instructions requested by defendant and instructed the jury (by Instruction No. 3) in view of defendant's admission of the oral contract of employment alleged by plaintiffs (as outlined in Instruction No. 2) that plaintiffs were "entitled to recover a judgment equal to the reasonable, fair value of their services as attorneys for * * * defendant * * *" in Case No. 113,-316, supra. Pursuant to this instruction and others in which the jury was instructed, among other things, how to arrive at the "reasonable, fair value" of plaintiffs' services, it returned a verdict for them in the sum of $3750. From the judgment entered in accord with said verdict, defendant has perfected this appeal.

In his briefs, defendant specifies thirty assignments of error in the rulings and judgment of the trial court, but his argument is presented under six principal propositions. We have carefully considered all of such argument, much of which is concerned with establishing an affirmative answer to the question of whether the information plaintiffs obtained through their representation of defendant in the case of Deupree v. Westcott, supra, was in the nature of confidential and "privileged" communications between attorney and client. In our opinion, in view of the issues joined in the briefs, a decision of all other questions becomes unnecessary upon reaching a correct determination of the following two, namely:

(1) Did plaintiffs perform the services they were employed by defendant to perform?

(2) Did the interests of Oberlee and Samuelson conflict with those of defendant in such a way that plaintiff's representation of them in Wyoming affected defendant's interest adversely?

For the purpose of deciding these questions we will assume, without deciding, that the information concerning the whereabouts of Oberlee and Samuelson, and other information plaintiffs may have obtained by representing defendant in the case of Deupree v. Westcott, supra, was confidential and privileged.

 Defendant urges application to the present case of the decision in the Hawaiian case of Christian v. Waialua Agr. Co., 30 Haw. 533. There the Court held:

"An attorney who has acted as such for one side may not render services professionally in the same case to the other side, nor in any event, whether it is in the same case or not, may he assume a position hostile to his client and one inimical to the very interests he was engaged to protect unless he is expressly authorized so to do; and it makes no difference in this respect whether or not the relation itself has been terminated for the obligation of fidelity and loyalty still continues. So,

also, it is immaterial whether or not in the course of the former employment confidential communications were received by the attorney from the client and whether or not all of the attorney's knowledge of the client's affairs was acquired from public records."

In speaking of the rule that attorneys may not represent clients whose interests are adverse, 7 C.J.S., Attorney and Client, § 47, p. 825, adds these important correlaries:

"However it is not inconsistent with the status or office of attorney that he represent different interests which are not actually adverse in the sense that they conflict or are hostile. Mere possibility that different interests represented by an attorney might develop a conflict is not sufficient to disqualify him. Nor is an attorney to be disqualified * * * where different parties represented by an attorney were actually benefited rather than adversely affected by the attorney's conduct."

And on page 827 of the same Work it is said:

"* * * The right to object that an attorney represents conflicting interests may be waived by the person entitled to assert such right."

In connection with the above see also Suttle v. Chadwell, 196 Okl. 298, 164 P.2d 880; Hopkins v. National Bank of Norman, 115 Okl. 196, 242 P. 532; Butler Bros. Development Co. v. Butler, 111 Mont. 329, 108 P.2d 1041, 1052; In re Pfiffner's Guardianship, Mo.App., 194 S.W.2d 233; 7 C.J.S., Attorney and Client, § 48, p. 829, Note 33.

Defendant's argument (with reference to the first of the above questions) that plaintiffs never completed their employment by him or fully performed all the services they were employed to perform, but abandoned his cause to represent the adverse interests of Oberlee and Samuelson relies upon the wording of the judgment in the Oklahoma County case of Deupree v. Westcott, supra, wherein, as hereinbefore indicated, Westcott's guardian was ordered to issue and deliver to the defendant "a proper and legally sufficient assignment of an un-

divided 3% interest in the whole of the 4% overriding royalty * * *". This computation of the defendant's entitlement was based, as hereinbefore shown, upon the premise that defendant was entitled to 10% of Westcott's 30% interest in said royalty. Defendant now argues that the above wording of the judgment carried with it or implied a requirement for plaintiffs to see that Westcott's title to the 30% interest was good in order to make Westcott's guardian's assignment to defendant good,—to see that Westcott's title was merchantable or impervious to attack (such as the one litigated in the Wyoming Federal Court) or legally sufficient as a part of requiring a "legally sufficient" assignment from his guardian to defendant. We do not think that judgment can properly be so interpreted. In the case of Deupree v. Westcott, supra, Westcott's title was not in issue—it was accepted without question or contradiction that his title was good and that he rightfully owned a 30% interest in the 4% overriding royalty. When defendant employed plaintiffs to represent him in that case he had the same opportunity to discover the defects in, and the same factual basis upon which to question Westcott's title, that plaintiffs had, but he appeared to be satisfied with it and employed them only to establish his right to a part of that interest. Clearly, the above quoted wording of the journal entry of judgment in that case could have contemplated nothing further than that the assignment executed by Mrs. Westcott as guardian be sufficient for that purpose; and we think that when plaintiffs, on the basis of said assignment and other instruments they obtained and forwarded, caused the oil company to start distributing to defendant his share of the proceeds from the lease's production they had certainly accomplished all that was required of them under that judgment.

 We now come to the second question hereinbefore stated concerning plaintiff's loyalty to the defendant as their client, viz., whether his representation of Oberlee and Samuelson was inimical to defendant's interest. On the basis of the undisputed evidence, defendant must, as he does, concede that the Federal Court litigation in Wyoming did not diminish or *ultimately* affect his interest adversely. We think it must also be conceded, as plaintiffs assert, that the ultimate result of the final orders and/or judgments in the Wyoming litigation in fact benefited defendant in that they had the effect of quieting his title to said interest against claims that previously rendered it questionable. And it is this final result that is the only one we believe should be controlling in this controversy. Whether plaintiffs earned the attorney fee they sought and obtained in the trial court must be measured by the result of their efforts, not by the more speculative one of how their representation of Oberlee and Samuelson *might* have affected defendant's interest. This is the true test, for the purposes of this case, of whether Oberlee's and Samuelson's interests were in fact adverse or hostile to those of the defendant. This question must undoubtedly be determined in the negative, and we think such determination makes it unnecessary (as defendant would have us) to go into the matter of whether, at the time plaintiffs obtained or accepted employment from Oberlee and Samuelson, their interests *might reasonably have been expected* to be adverse to, or in conflict with, those of the defendant. The latter question relates to the ethics of plaintiffs' conduct as lawyers, and, under the circumstances present here, has no bearing upon the ultimate issue of whether or not plaintiffs earned the fee they recovered. In a different situation that might have been a very real issue. Not only that, but if, when he discovered or had been informed by plaintiff that the latter was representing Oberlee and Samuelson in the Wyoming litigation, defendant had, by affirmative action, objected to his continuing such undertaking it is quite conceivable (in accord with the principles enunciated in Christian v. Waialua Agr. Co., supra, and other cases cited in the Annotations at 126 A.L.R. 1271), that he could have effectively prevented plaintiff from doing so, and might here be in a better position, from an equitable standpoint, to complain of plaintiffs' conduct; but the record is devoid

of anything like that. On the contrary, the evidence shows that plaintiff and defendant had an amicable understanding about their respective positions in the Wyoming litigation and continued to enjoy a great measure of friendly cooperation in their contacts with reference thereto, even though, according to defendant early in that litigation he asked plaintiff to dismiss the first of those cases as to him. Plaintiff repeatedly promised him that his interest would be protected, however, and defendant finally decided to "stay in" the Wyoming litigation "and get a judicial determination from the Federal Court out there." The record fails to reveal any other occasion, during all of this time, on which defendant protested plaintiffs' representation of Oberlee and Samuelson. He never accused plaintiff of disloyalty or unprofessional conduct or in any way indicated that by representing those parties in Wyoming plaintiff had forfeited his firm's right to the fee on which he had previously made a voluntary oral tender of payment, until after the Wyoming litigation was terminated and shortly before this action was filed, when he refused plaintiff's request for an assignment of one-sixth of his interest in payment of plaintiffs' attorney's fee. Under the facts and circumstances, all of which we have weighed, but many of which we have not attempted to mention herein, we think it reasonable to conclude that defendant tacitly consented to plaintiff's continuing his employment in the Wyoming litigation, that, under the circumstances briefly described, he waived any objection he might previously have had or could otherwise have enforced against plaintiffs, and that, when the present case was filed, he was in no position to rely upon such alleged conflicting employment as a defense to the present action. This is what the trial court in effect held by his refusal to give the instructions requested by defendant, and his giving of the ones he gave, especially Instruction No. 3. As plaintiffs point out, canons of ethics and regulations of the State Bar Association promulgated to govern attorneys' professional conduct are not substantive law and are not decisive of the rights of the parties hereto. That plaintiffs' conduct may be subject to censure from an ethical standpoint does not detract from their right on the basis of the facts proven here, to be paid for the services they undoubtedly rendered defendant in the case of Deupree v. Westcott, supra.

Nor do we think that on the basis of the evidence, the trial court erred in refusing to instruct the jury on defendant's alleged cause of action against plaintiffs for recovery of the sums totalling $2800, as his expenses and pay for his services in defending the Wyoming litigation. The litigation here referred to consisted not only of Civil Cause No. 3098 in which Oberlee and Samuelson were complainants, but included another Federal Court Case, No. 3181, brought by Barrett, and others, including a geologist named Krampert. Since Cause No. 3098 was the only one, brought by clients of the plaintiff, it is the only part of said litigation considered in this phase of the present controversy. Defendant's only trip to Wyoming that the evidence established as necessary was the one he made as a witness. It was undisputed that he was paid witness' fees on that occasion and that he went in company with his wife and extended the trip and his sojourn in the West to make it a combination one of business and pleasure. There was no separate, un-reimbursed expenses of the business part of that trip proved to have been made necessary by plaintiffs. Nor did the evidence establish any separate time or effort necessarily expended by defendant in briefing work or in representing himself in Cause No. 3098, supra, alone. While it is true that he filed at least one pleading in that case, his proof failed to establish any monetary value for such work or its cost to him, if any, separate and distinct from his efforts in Cause No. 3181, supra.

In accord with the foregoing views, we find no cause for reversal in any of the alleged errors urged by the defendant. The judgment of the Trial Court is therefore affirmed.

JOHNSON, V. C. J., and WELCH, CORN, DAVISON and WILLIAMS, JJ., concur.