SUTTLE v. CHADWELL.

No. 31867. Dec. 18, 1945.

Rehearing Denied Jan. 8, 1946.

*164 P. 2d 880.*

Creekmore Wallace, of Oklahoma City, for plaintiff in error.

Embry, Johnson, Crowe, Tolbert & Shelton, of Oklahoma City, for defendant in error.

HURST, V. C. J. This is an accounting suit, commenced by the plaintiff, A. Ben Chadwell, against the defendant, Chas. M. Suttle, and involving the construction of three projects at Pratt, Kan., under three contracts with the United States Government, referred to as the Army Air Base Contract, the Hangar Contract, and the Ordnance Contract. The plaintiff and defendant were partners in carrying out the contracts, operating under the firm name of "Suttle & Chadwell, Ltd." Harry Smith, project engineer for the partnership, intervened claiming as his compensation $125 per week plus 10 per cent of the profits. A. J. Marshall

and E. S. Marshall also intervened claiming compensation as superintendents, but their claims have been settled and they have no more interest in the case.

On October 28, 1942, Suttle procured for himself a tentative contract with the government for the construction of the Army Air Base. Thereafter, on November 2, 1942, he entered into a written contract with Chadwell, creating the partnership and agreeing that the partnership should construct the Army Air Base. Suttle was to deposit $15,000 and Chadwell $30,000 as funds to carry out the work. Suttle was to furnish all tools, and to receive credit for the depreciation thereof to be charged to the general account. The partners were to receive no salaries, but were to be allowed their expense accounts. After the payment of all expenses the partners were to receive their $15,000 and $30,000, respectively, and all remaining moneys were to be divided equally, and the contract was to terminate upon the completion of the job. This partnership related only to the Army Air Base.

Thereafter, there were negotiations between Chadwell and Suttle with reference to the Hangar Contract and the Ordnance Contract. In order to secure these two new contracts, it was necessary to put up $25,000. Suttle being unable to raise his share of the money, Chadwell put up the entire amount, and, on December 19, 1942, wrote Suttle a letter signed by himself. The letter was, by agreement modified by interlineations and additions, and as modified was signed by Suttle. As so modified, the letter is as follows:

"Mr. Charles M. Suttle

"Subject to our entering into a formal, mutually satisfactory contract at a later date in Oklahoma City, I hereby tender to you the following propositions.

"Our present contract on the Pratt Air Base, which is now in force and

effect, is to remain without alterations (sic).

"While you are in Oklahoma City, you are to receive a check each week as expenses, in the amount of $50.00 from the account of Suttle-Chadwell. When you are in Pratt, Kansas, you are to receive a check in the amount of $100.00 from the account of Suttle-Chadwell.

"I am to do all necessary financing on all new work which shall be no obligation of yours.

"All equipment that you now have on the Pratt Air Base is to remain on the said reservations for use on the present contract or any additional work to be acquired on the said base and you are to receive compensation for said equipment on all new work, starting with the hangar, in accordance with and under the rules of customary practice and charges, as set out by the present ruling of government prices for such equipment. The said equipment is to be maintained at the expense of the job and be returned to the owner in the same condition it was received.

"You have in your possession Electric Drills that are necessary for the construction of all present work and you are to send these to the job as quickly as possible, so that work will not be stopped.

"All additional work is to be taken in the name of Suttle-Chadwell and your compensation is to be 10 per cent, as set out above.

"All bank accounts in Pratt, Kansas and in Oklahoma City, are to remain as Suttle-Chadwell and the firm of Suttle-Chadwell is to continue without any changes and without any interruptions until the existing contract at Pratt Air Base is completed at which time the account shall be closed and each partner receives the money he contributed to the account and his share of the profits and this applies to the contract now in effect only.

"If this is your understanding and agreement and you accept the terms and conditions as set out above, then affix your signature hereto.

"Yours very truly,
"12/19-42

"Effected: Chas. M. Suttle, A Ben Chadwell

"Charles M. Suttle, A. Ben Chadwell"

No other or formal contract was signed as contemplated by said letter, and the Hangar Contract and the Ordnance Contract were carried out by the partnership under the terms of this letter contract.

The judgment of the court was that the foregoing letter constituted a valid contract; that each partner should receive the return of the money he had advanced to the partnership; that an attorney's fee of $2,500 should be allowed to the attorney for the partnership; that the net profits on the Air Base Contract amounted to $58,778.11, and should be divided 50 per cent to Chadwell, 40 per cent to Suttle, and 10 per cent to intervener Smith; and that the net profits on the Hangar contract amounted to $32,073.73 and on the Ordnance Contract to $17,765.41, and should be divided 80 per cent to Chadwell, 10 per cent to Suttle, and 10 per cent to intervener Smith. Suttle appeals.

Suttle argues the case under five propositions, (1) error in the finding and judgment allowing an attorney fee for the attorney for the partnership; (2) error in the finding and judgment that the letter of December 19, 1942, constituted a new partnership agreement; (3) error in the finding and judgment that no fraud was practiced in the execution of the contract of December 19, 1942; (4) error in the finding and judgment that he had ratified the contract of December 19, 1942, and was estopped to deny it; (5) error in the finding as to allocation of the costs of the projects. These propositions we now take up in the order stated.

1. The attorney for the partners drew up the original partnership agreement to the satisfaction of each partner. The evidence detailed various services performed by him, including services in connection with the drawing of the contracts with the government for the

different construction projects, services and conferences in connection with labor troubles, taxes, bonds, renegotiation of the contracts, various trips and conferences at Pratt, Kan., Washington, D. C., and elsewhere with various persons. The evidence discloses that there had been set up on the books of the partnership attorney's fee of $1,000 on the Air Base Contract, $1,000 on the Hangar Contract, and $500 on the Ordnance Contract, and that these fees were agreed to by the attorney and Chadwell, as a member of the partnership. There was no expert testimony offered by either side to prove the value of the services. The court fixed the attorney fee as a charge against the partnership in the total sum of $2,500 as set up on the books, less the sum of $250 already paid thereon. We hold that the court was warranted under the evidence in fixing said attorney fee. Testerman v. Burt, 143 Okla. 220, 289 P. 315; 7 C. J. S. 1093, § 191 (d).

It is argued by Suttle that this action is a controversy between two partners in an accounting, and that an attorney cannot represent two conflicting interests. It is true that an attorney cannot represent conflicting interests (7 C. J. S. 823 § 47), but the evidence discloses that the services in question for which compensation was allowed the attorney were rendered for the partnership and not for either member of the partnership in his individual capacity. But, assuming, without deciding or intimating an opinion thereon, that it was not proper for the attorney to represent one partner against the other partner, Suttle cites no case holding that, by doing so, he forfeited his right to the fees earned for representing the partnership. The proper way for Suttle to have raised the question would have been to object to the attorney's appearance in this case, and no such objection was made. See 7 C. J. S. 829.

2. The letter of December 19, 1942, written by the plaintiff to the defendant, shows a clear-cut proposal that additional contracts with the government

were to be entered into, and stated the duties and division of profits of each party. Each party accepted and approved the matters therein contained by affixing his signature thereto. The Hangar Contract and the Ordnance Contract were entered into and the work was completed pursuant thereto.

The defendant cites cases from this and other states holding that for letters or telegrams to constitute a binding contract there must be a meeting of the minds. In the cases cited it was held that there was no meeting of the minds, but the facts were different from those here involved. We think the letter was definite as to the essential matters involved in this case, and there was a meeting of the minds on those matters.

It is also argued by the defendant that the letter is indefinite and uncertain, because it starts out with the words, "subject to our entering into a formal mutually satisfactory contract at a later date in Oklahoma City." This language indicates that the parties intended to take the letter to Oklahoma City and there have it reduced to a formal contract. Since the matters set out in the letter constitute a complete agreement and the meeting of minds, and the construction contracts were carried out under its terms and without a more formal contract being signed, we hold that it constituted a binding contract. Western Roofing Tile Co. v. Jones, 26 Okla. 209, 109 P. 225, Ann. Cas. 1912B, 127; Fry v. Foster, 179 Okla. 398, 65 P. 2d 1224; Sanders v. Pottlitzer Fruit Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757; 12 Am. Jur. 523.

3. It is argued in the alternative that if the above letter constitutes a contract, it was fraudulently entered into and is void in its inception. In support of this proposition, the defendant says that he did not know that the proceed order for the new contracts had been issued by the government at the time of the execution of the letter contract. The evidence was in conflict upon this matter, and the court specifically

302

found that "there was no fraud in its inception and the parties thereto by their acts have ratified and approved said contract, and in any event they would be estopped to deny that said contract was legal and binding." This finding is not clearly against the weight of the evidence and hence will not be disturbed.

4, 5. It is further argued by the defendant that the judgment and the allocation of costs among the three contracts were not supported by any competent evidence, that the plaintiff relied upon book accounts, which were never introduced in evidence, and that the auditors' reports which were introduced in evidence were hearsay evidence based upon hearsay evidence, because the auditors had no personal knowledge of the items and their reports were merely matters of opinion. But the books and accounts relating to the construction of the three government contracts were extremely voluminous, and to have introduced all such books and records in evidence would have tended to confuse rather than enlighten the court. Extensive reports summarizing the records prepared by two auditors were introduced together with a lengthy and detailed oral examination of each. By order of the court, all the books and records were in court during the three weeks the trial was in progress and had been available to defendant and all other parties for more than two months prior to the commencement of the trial. Under these circumstances the reports were admissible in evidence. Pierce Petroleum Corporation v. Osage Coal Company, 133 Okla. 130, 271 P. 675; E. A. Hooven v. First National Bank of Ardmore, 134 Okla. 217, 273 P. 257, 66 A. L. R. 1203; 66 A. L. R. 1206, annotation; 20 Am. Jur. 697, § 831.

We therefore hold that the admission of the auditors' reports in evidence was not error, and that the findings of fact by the court were not clearly against the weight of the evidence.

In constructing the Army Air Base, the partnership rented certain machinery and tools from the government. The court charged the rental on the machinery to Suttle, and he contends that this was error. We think the court was correct in so doing, in view of the fact that the contract of November 2nd provided that Suttle should "furnish all tools, machinery and equipment of every nature and description necessary to construct" the air base.

Chadwell claims that he is entitled to interest on his judgment, since Suttle filed no supersedeas bond and he could not draw down the sum due him and on deposit in the bank because of the requirement that both parties sign checks on the account. He cites authorities in support of his argument, but none of them involved an accounting suit such as this wherein a sum on deposit is being divided. We think this question is not properly before us and we decline to pass thereon.

Judgment affirmed.

GIBSON, C.J., and WELCH, CORN, DAVISON, and ARNOLD, JJ., concur.