2015 OK 49

**Michael JENSEN, Petitioner/Appellant,**

v.

**Brandy POINDEXTER, now Jensen, Respondent/Appellee.**

**No. 112,684.**

Supreme Court of Oklahoma.

June 23, 2015.

William D. Thomas, Thomas Law Firm, PLLC, Tulsa, Oklahoma, for Petitioner/Appellant.

Christopher Uric Brecht, Richards & Connor, Tulsa, Oklahoma, for Respondent/Appellee.

Peggy Haddock, Tulsa County Public Defender, Tulsa, Oklahoma, for minor child.

Stephen E. Hale, Tulsa, Oklahoma, Guardian Ad Litem.

TAYLOR, J.

¶ 1 The issue before this Court is whether the district court erred in sustaining the legal parent's motion to disqualify opposing counsel. The question we consider is whether the integrity of the judicial process is likely to suffer real harm when an attorney who represents a client in a proceeding to establish paternity and to determine custody of a minor child fails to report suspected child abuse to the proper authorities as required by statute, conducts a forensic interview of the child to obtain evidence to support the client's position, does not obtain the legal parent's ·permission prior to the interview, and files his own affidavit attesting to the credibility of the child's affidavit. We find that the district court did not err in sustaining the motion to disqualify opposing counsel when the attorney likely compromised the legal parent's right to a fair proceeding by contaminating the fact-finding procedure and by establishing a relationship of undue influence with the child.

## I. FACTS AND PROCEEDINGS

¶ 2 Brandy Poindexter (Mother) is the legal parent of a minor child (Child) born in 2005. On September 6, 2006, Michael Jensen (Client) filed a paternity action seeking joint custody of Child. The record on appeal does not include Child's birth certificate. The issue of paternity is not contested, but the district judge has yet to enter a final paternity decree. On April 29, 2013, William D. Thomas (Attorney) filed an entry of appearance on Client's behalf, becoming Client's fourth attorney in the paternity proceeding.

¶ 3 The following allegations are gleaned from the record and are included to provide a complete understanding of the issue. Child resided with Mother, but visited Client. On or around May 19, 2013, Child allegedly told Client that he had been abused by Mother and her husband. Child was eight years old at the time. Client reported the allegations to the Department of Human Services (DHS) as required by Title 10A, Section 1–2–101(B)(1) of the Oklahoma Statutes. DHS investigator Monica DiSanto conducted a child-safety assessment of Mother's home, and a trained forensic interviewer from DHS

questioned Mother, her husband, and Child. DHS released a report on July 8, 2013, indicating that no "Present Danger exists/existed." At DHS's suggestion, Mother and Child began seeing a counselor.

¶4 The following facts are supported by the record. Client claims that on January 10, 2014, Child again alleged that he had been abused by Mother and her husband. This time, Client did not report the new allegations to DHS, but instead brought the Child to Attorney to be interviewed. On January 12, 2014, Attorney conducted a forensic interview of Child without seeking permission from Mother or securing independent counsel for Child. Only Attorney and Child were present during the interview. There is no evidence that Attorney explained to Child that he could request for Mother to be present during the interview, that he could refuse to answer the interview questions, or that he could be cross-examined based on his answers. Attorney began the interview by asking Child to identify each of three statements as either a truth or a lie. According to Attorney, the purpose of this "truthfulness" test was to establish Child's credibility as a fact witness. Client directed Attorney to use the results of the interview to file an application for emergency temporary custody.

¶5 Attorney prepared several affidavits based on the interview. The first affidavit was signed by Client and identified Child by his full name. The second affidavit was signed by Attorney, also identified Child by name, documented the administration of Attorney's "truthfulness test," and admitted that the purpose of the test was to provide facts for the court to determine "a level of credibility for [Child's] statements." The third affidavit was signed by Child and described the alleged abuse. Child did not read the affidavit before signing it, relying instead on Attorney to read it aloud. Attorney was aware that Child struggled with cognitive perception and reading comprehension, as detailed in Child's Individualized Education Plan.

¶6 On January 13, 2014, Attorney filed Client's Application for Emergency Temporary Orders and Brief in Support, which included the three affidavits. None of the documents were filed under seal. The district court granted emergency temporary custody to Client subject to Attorney first reporting the abuse allegations to DHS as required by statute. The district court sealed the application and the brief in support in an order filed on January 14, 2014.

¶7 On January 14, 2014, Mother moved to disqualify Attorney based on two theories. First, Mother contended that Attorney violated Rule 3.7 of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011, ch. 1, app. 3–A, by making himself a necessary witness to Child's credibility and the interview process. Second, Mother contended that Attorney harmed the integrity of the judicial process by establishing a relationship of undue influence with Child, tainting Child's statements in this and future proceedings.

¶8 On February 12, 2014, the district court held an evidentiary hearing on the motion to disqualify. Attorney admitted the following: (1) he was aware of his statutory obligation to report suspected child abuse to DHS, (2) he submitted Child's affidavit to prevent Child from testifying in court, (3) there was no reason he could not be called as a witness to Child's credibility, (4) his relationship with Child was not privileged, and (5) the affidavits and communications made during the interview were not protected under the work-product doctrine after he filed the affidavits without a motion to seal. Monica DiSanto, the DHS investigator who conducted the safety evaluation of Mother's home in 2013, also testified. DiSanto explained that a forensic interviewer is specially trained to interview child victims to gather evidence without asking leading questions that could influence the child's statements.

¶9 On March 19, 2014, the district court sustained the motion to disqualify. The district court found, among other things, that Attorney had made himself a necessary witness in the underlying proceeding and that the integrity of the judicial process was harmed when "a parent's counsel in a custody and visitation case uses an eight-year old child to obtain the evidence to support the parent's position and fails to inform that

child of the legal consequences of what the child is signing and the counsel then himself signs his own affidavit to support and give evidence as to the credibility of the child's affidavit." We retained the appeal.

## II. BURDEN OF PROOF AND STANDARD OF REVIEW

¶ 10 The standard for granting a motion to disqualify counsel is "whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified." *Ark. Valley State Bank v. Phillips,* 2007 OK 78, ¶ 23, 171 P.3d 899, 910–11. A party seeking to disqualify opposing counsel must prove the likelihood of such harm by a preponderance of the evidence. *Id.* A trial court must include in its disqualification order a specific factual finding that the integrity of the judicial process will likely suffer real harm unless the attorney is disqualified. This is consistent with our requirement that a trial court that disqualifies an attorney based on a conflict of interest or improper possession of confidential information must include in its disqualification order a specific factual finding that the attorney had knowledge of material and confidential information. *Id.* ¶ 8, 171 P.3d at 903. When reviewing an order granting a motion to disqualify counsel, we review the trial court's factual findings

for clear error and its application of the law *de novo. Id.* Disqualification is a drastic measure, and parties shall not use motions to disqualify counsel for violations of our professional-conduct rules as procedural weapons. *Id.* ¶ 13, 171 P.3d at 905.

## III. ATTORNEY DISQUALIFICATION

¶ 11 A litigant has a fundamental right to be represented by counsel of his or her choice. *Towne v. Hubbard,* 2000 OK 30, ¶ 14, 3 P.3d 154, 160. However, a litigant's right to choose his or her counsel is "not absolute" and "may be set aside under limited circumstances, where honoring the litigant's choice would threaten the integrity of the judicial process." *Id.* ¶ 15, 3 P.3d at 161.[1] Violations of our professional-conduct rules provide the most common threats to the integrity of the judicial process, *id.,* but they are not the only threats.[2] The integrity of the judicial process is also harmed when a party's right to a fair proceeding is compromised. *See Ark. Valley State Bank v. Phillips,* 2007 OK 78, ¶ 17, 171 P.3d 899, 907–08.

¶ 12 On appeal, the parties focus their arguments on the issue of whether Attorney should be disqualified for making himself a "necessary witness" at trial and whether his continued representation threatens the integrity of the judicial process.[3] Rule 3.7 of the

1. This rule considers two important interests: (1) a litigant's right to employ counsel of his or her choice and (2) the public's interest in preserving the integrity of the judicial process. *See Ark. Valley State Bank v. Phillips,* 2007 OK 78, ¶ 18, 171 P.3d 899, 908. The public's interest in preserving the integrity of the judicial process trumps a litigant's right to employ counsel of his or her own choice. *See id.* ¶ 23, 171 P.3d at 910–11.

2. "The Rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules." Scope, ORPC, 5 O.S.2011, ch. 1, app. 3–A.

3. Attorney admits that he interviewed Child to prevent him from testifying at trial. Attorney cannot complain that the motion to disqualify him is being used a procedural weapon by Mother after he manipulated the situation to prevent Mother from calling Child as a witness. Attorney also argues that his disqualification would work a substantial hardship to Client and should be set aside under Rule 3.7(a)(3). We need not address this argument because our determina-

tion that Attorney should be disqualified is not based on a finding that Attorney violated Rule 3.7.

Attorney makes additional arguments that we find either not persuasive or inadequately supported by citation to legal authority. These arguments include: (1) attorneys are not prohibited from interviewing child witnesses; (2) Attorney was required to interview Child to fulfill his professional-responsibility duty to Client, to satisfy the pleading code's reasonable-inquiry standard, and to secure an affidavit to support the emergency temporary custody application as required by Title 43 O.S.2011, Section 107.4(A) of the Oklahoma Statutes; (3) Attorney had no duty to secure counsel for Child under Rule 4.3 of the ORPC; (4) Child became a third-party beneficiary to Client's relationship with Attorney; (5) the district court erred in ruling that Client had no right to consent to Child's interview; (6) certain DHS documents should have been turned over when the district court found that they were protected; (7) the district court incorrectly interpreted Title 43, Section 113 of the Oklahoma Statutes to require that attorneys be prohibited

ORPC 3.7 prohibits a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness."[4] This rule protects the integrity of the judicial process by: (1) eliminating the possibility that the lawyer will not be an objective witness, (2) reducing the risk that the finder of fact may confuse the roles of witness and advocate, and (3) promoting public confidence in a fair judicial system. *Crussel v. Kirk,* 1995 OK 41, ¶ 11, 894 P.2d 1116, 1120. However, the disqualification will be set aside if it "would work substantial hardship on the client." ORPC Rule 3.7(a)(3). A client seeking to avoid disqualification due to substantial hardship must demonstrate that his or her interests in retaining the attorney outweigh those of the tribunal and the opposing party in disqualifying the attorney. *See* ORPC Rule 3.7 cmt. 4.

■ ¶ 13 Here, Attorney inserted himself into the paternity proceeding as a forensic interviewer, interviewed a minor child without parental consent, and submitted a signed affidavit attesting to Child's credibility. Attorney and Child were the only persons present during the interview. Thus, Mother's only option to rebut the evidence presented in Child's affidavit, to ascertain what type of relationship Attorney may have established with Child during the interview, and to determine if Attorney distorted Child's recollections by suggestive or leading questions would be to call Attorney as a witness to Child's credibility. Were Attorney to testify at trial, the integrity of the judicial process would be harmed in all the ways Rule 3.7 is designed to protect against: (1) Attorney's interest in winning the case for Client would call into question his objectivity as a witness, (2) Attorney's dual role as advocate-witness could confuse the factfinder, and (3) public confidence would be shaken were Attorney allowed to interview Child without parental consent.

¶ 14 Were Attorney disqualified from acting as a trial advocate under Rule 3.7 of the ORPC, he would still be permitted to represent Client in other aspects of the proceeding as long as he did not act as Client's advocate at trial. Here, the specific facts of the case compel us to consider whether the gravity of the harm is severe enough to warrant Attorney's immediate disqualification from all aspects of the underlying paternity case. Mother argues that Attorney's improper interviewing techniques have tainted Child's statements in this and future proceedings and, unless Attorney is disqualified, the relationship that Attorney established with Child during the interview will continue to taint Child's statements.

■ ¶ 15 One court examining similar facts and arguments as those before us found "consistent concern [among child psychologists] about the interview process and the possibility of distorting recollections by suggestive or leading questions." *New Jersey v. Michaels,* 264 N.J.Super. 579, 625 A.2d 489, 511 (App.Div.1993). The *Michaels* court underscored the gravity of the harm to the integrity of the judicial process by analogizing the situation to an in-court identification tainted by the suggestiveness of pretrial identification. *See id.* at 516. The *Michaels* court concluded that a defendant's right to a fair trial is irretrievably lost when an accuser's testimony is based on unreliable perceptions or memory caused by improper investigative procedures. *Id.* at 517. We find this reasoning persuasive.[5] A party's right to a

---

from interviewing children in custody and visitation cases; and (8) Attorney's communications with Child were privileged or protected by the attorney-work product rule.

4. Rule 3.7 of the ORPC, 5 O.S.2011, ch. 1, app. 3–A, provides:

    (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
    (1) the testimony relates to an uncontested issue;

    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.
    (a) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

5. *See* Rule 3.4 of the ORPC ("A lawyer shall not ... counsel or assist a witness to testify falsely."); Rule 3.4 cmt. 1 (explaining that fair competition

fair proceeding is compromised when opposing counsel inserts himself into the role of forensic interviewer to obtain evidence to support his client's position, taints the fact-finding process with improper interviewing techniques, establishes a relationship of undue influence with a child witness, and submits affidavits attesting to the child witness's credibility.

¶ 16 Our statutory scheme anticipates these harmful situations and provides a process that protects the rights of the litigants and the integrity of the judicial process. While we need not decide whether a violation of a single statutory obligation is sufficient to disqualify counsel, an attorney's failure to follow multiple statutory and ethical guidelines may indicate that harm to the judicial process is likely to result unless he is disqualified. An attorney who suspects that a minor child in a paternity proceeding is being abused by the opposing party must immediately report the suspected abuse to the appropriate authorities. 10A O.S.2011, § 1–2–101(B)(1) ("Every person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services."). The legislative pronouncement is explicit; all persons shall report suspected child abuse to DHS. Attorneys are not exempt from this statutory obligation. Here, Attorney ignored his obligation under Section 1–2–101(B)(1) by not immediately reporting the suspected abuse to DHS.

¶ 17 Attorneys are not prohibited from interviewing child witnesses. However, attorneys cannot ignore the proper legal process and maneuver to give their clients an unfair advantage over the opposing party by compromising that party's right to a fair proceeding. Here, Attorney knew of his obligation to report the suspected abuse to DHS, but instead chose to hijack the prescribed legal process. Attorney deprived Mother of the right to have the abuse allegations immediately investigated and Child's interview recorded by impartial, trained professionals concerned only with Child's best interests and unencumbered by duties to feuding litigants. Child was only eight years old at the time of the interview and could easily have been intimidated by Attorney's authoritative position when no adult was present to advocate for Child's interests.

¶ 18 Mother's right to a fair proceeding must be protected by allowing her to question Attorney about the interviewing techniques he used with Child. Given Attorney's role as advocate and lack of training in forensic interviewing of minor children, Mother has reason to believe that Attorney employed improper interviewing techniques such as leading questions, coaching, and nonverbal cues that destroyed Child's capacity to independently recall events and replaced them with the abuse allegations. Questioning Attorney is Mother's only option to show that Child's affidavit is founded on unreliable perceptions or memory and that his post-interview statements are similarly contaminated. Further, Mother's right to a fair proceeding must also be protected by immediately disqualifying Attorney from all aspects of the proceeding to eliminate the risk that Attorney's relationship of undue influence with Child will taint Child's future statements.

¶ 19 Mother has shown by a preponderance of the evidence that Attorney likely harmed her right to a fair proceeding by contaminating the fact-finding procedure and by establishing a relationship of undue influence with Child. The specific facts of the case indicate that the gravity of the harm is so severe as to warrant Attorney's immediate disqualification from all aspects of the underlying paternity case. We thus affirm the district court's order sustaining Mother's motion to disqualify Attorney.

## IV. CONCLUSION

¶ 20 A lawyer is not prohibited from interviewing a child witness, and nothing in this opinion should be construed to prevent an attorney from interviewing a child witness. However, if an interview scenario results in circumstances similar to those here, then he or she is no longer able to continue as an attorney in that particular case. A lawyer in

in the adversary system requires prohibitions against improperly influencing witnesses).

a proceeding to establish paternity and to determine custody of a minor child who ignores his statutory duty to report suspected child abuse, inserts himself into the role of forensic interviewer, interviews the minor child without the legal parent's consent, likely taints the fact-finding process with improper interviewing techniques, likely establishes a relationship of undue influence with the child witness, and submits affidavits attesting to a fact witness's credibility should be disqualified from all aspects of the proceeding. Mother proved by a preponderance of the evidence that Attorney's continued representation will likely cause real harm to the integrity of the judicial process. We affirm the district court's order sustaining the motion to disqualify counsel and remand for further proceedings. Attorney is disqualified not only from acting as an advocate at trial, but also from acting as an advocate in all aspects of the underlying proceeding.

**DISTRICT COURT'S JUDGMENT AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.**

Concur: REIF, C.J., COMBS, V.C.J. and WATT, WINCHESTER, EDMONDSON, TAYLOR, and COLBERT, JJ.

Concur in Part, Dissent in Part: KAUGER and GURICH, JJ. (by separate writing).

GURICH, J., with whom KAUGER, J., joins concurring in part, dissenting in part:

¶1 I write separately to point out several critical facts omitted from the majority opinion. While I concur that under the particular circumstances, the attorney in this case should be disqualified; I do not believe lawyers should be per se prohibited from interviewing a child witness in custody disputes. Of paramount importance in any legal decision affecting the welfare of a child is consideration of his or her best interests. The majority opinion renders this basic principle subservient to the mother's custodial rights and the majority's perceived transgression of ethical boundaries governing attorney conduct.

¶2 First, the abuse suffered by the minor child in this case was shocking. So much so, the trial court issued an emergency order placing custody of the child with father [1]—a direct result of the efforts undertaken by counsel and father. There were allegations the step-father drank excessively, hit the minor child, and imposed inappropriate discipline such as forced calisthenics. Additionally, it was suggested mother inflicted undue physical punishment on her son. However, the real issue presented in the trial court was the sexual abuse endured by this child. Although mother and step-father were not the perpetrators, mother had knowledge of the child's illicit encounters. She discovered the molestation and notified father. However, she apparently did not fully disclose the severity of the situation and urged him not to confront the child. On January 11, 2014, the child voluntarily disclosed the ongoing sexual activity to his father.

¶3 Three times before the 2014 emergency action, DHS was notified about the safety and well-being of the minor child. In 2008 (Referral #11684* *), DHS investigated alleged abuse following a report by the child's pediatrician.[2] Mother refused to allow the child to be interviewed. Nevertheless, DHS concluded the concerns were unsubstantiated and took no action. A second investigation was initiated in April 2013 (Referral #11568* *). Again, DHS concluded no action was warranted. A third inquiry was commenced in May 2013 (Referral #15315* *), after the child expressed suicidal ideations. DHS found no intervention was necessary, but noted mother and father's will-

---

1. Throughout the majority opinion, father is referred to as "Client," despite mother admitting his parentage and father exercising visitation with the child throughout the pendency of this case. Further, DHS reports identify Michael Jensen as a Parent/Person Responsible for Child (PRFC). Michael Jensen is the father of the minor child in this case, regardless of the trial court's failure to enter a paternity order for near-

ly nine years. Adjudication of paternity is necessary for purposes of custody determinations, not for recognition of a man as the father to his children. *See* 10 O.S.2001 § 6 and 10 O.S.2011 § 7800.

2. The majority opinion makes no mention of this 2008 DHS inquiry.

ingness to obtain psychotherapy for their eight-year old son. After beginning counseling sessions, mother unilaterally terminated the therapy after only a couple of months.

¶ 4 After receiving no assistance from DHS and weighing the urgency of the situation, father sought to protect his son by contacting his attorney. While the attorney's interview in this case may have exceeded what was necessary, there is no ethical proscription which forbids attorney interviews of children.[3] Moreover, at the time the child was not represented by counsel and a guardian ad litem had not been appointed. Inherent in a lawyer's responsibilities is the obligation to thoroughly evaluate the facts of each case. This includes seeking information through witness interviews. It should be noted that Mr. Thomas served as a Tulsa County Sheriff's Deputy for ten years prior to entering law school. During his service, Mr. Thomas interviewed numerous victims of criminal acts, including child and domestic abuse.[4]

¶ 5 The route taken by attorney and father in this case was pursuit of an emergency custody order via 43 O.S.2011 § 107.4. Utilization of emergency custody relief demands thorough assessment of the allegations presented by a client; more so than the ordinary due diligence mandated by 12 O.S.Supp.2013 § 2011. Such a tactical approach was almost certainly more prompt and effective in protecting the child in this case than notifying DHS and waiting for their investigation.[5] In fact, it is likely DHS would have insisted

father pursue an emergency custody order lest he face a custodial placement with the state for failing to protect his son. *See generally* OAC 340:75–3–300.

¶ 6 The majority opinion also infers father had no authority over decisions affecting his son and that his actions were somehow violative of mother's status as legal custodian. While 10 O.S.2011 § 7800 and its predecessor vests a mother with custody prior to a court order adjudicating paternity, it does not eliminate the intrinsic constitutional rights vested in a natural parent—in this case there was no dispute over father's biological relationship with the child. In truth, father had an absolute right to take the action he did in furtherance of protecting his son. *See* 43 O.S.2011 § 111.4(A) ("A *parent* who, in good faith and with a reasonable belief supported by fact, determines that the child of that parent is the victim of child abuse or neglect, or suffers from effects of domestic violence, may take *necessary actions to protect the child,* including refusing to permit visitation.")(emphasis added).

¶ 7 Accordingly, while I agree that the attorney for the father exceeded his role as an advocate gathering and evaluating the facts, I dissent to what I perceive as blanket restrictions placed by the majority on attorneys seeking to serve their clients and protect children from abuse.

3. According the majority, father's attorney prepared and submitted the child's affidavit in a tactical move designed to "prevent mother from calling child as a witness." Such a characterization of the testimony misconstrues the actual intent of father's attorney. He testified that the affidavit was done in lieu of bringing him to court on the emergency, "to protect [child] so he doesn't have to sit in this [witness] chair." Tr. at 84, lines 3–4. Nothing about submission of the affidavit *prevented* either parent from calling the child as a witness at the subsequent show cause hearing or from urging the trial court to interview the child *in camera*.

4. Mr. Thomas' interview with the child likely crossed the line between an attorney ascertaining relevant facts in furtherance of pursuing an emergency custody order for father and the role of a law enforcement officer investigating an alleged criminal act. It was this particular varia-

ble in the facts presented which I believe supports the trial court's disqualification ruling.

5. The majority emphasizes Mr. Thomas' violation of the law by not promptly reporting the alleged abuse to DHS pursuant to 10A O.S.Supp.2013 § 1–2–101. However, Mr. Thomas did report the abuse after being directed to do so by the trial court. The revelation of sexual abuse occurred during a weekend when child was safely in father's care. Both the emergency application and notice to DHS was given the first business day following the weekend—Monday January 13, 2014. Faced with allegations of serious abuse and time constraints due to trial court docket availability, attorneys should have discretion to pursue emergency custody orders without first notifying DHS, as long as notice is given. As a practical matter, emergency custody matters are often presented to the court first, with trial judges directing notice to DHS when necessary.