KEITH v. MARRS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:KEITH v. MARRS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 KEITH v. MARRS
2019 OK CIV APP 38
444 P.3d 1090
Case Number: 117255
Decided: 06/14/2019
Mandate Issued: 07/10/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 38, 444 P.3d 1090

 

RONNIE KEITH, D.O., Plaintiff/Appellant,
v.
PERRY MARRS, JR.; BENJAMIN BUTTS; and BUTTS & MARRS, P.L.L.C., Defendants/Appellees,
and
CYNTHIA GOOSEN; DANA MORGAN; and COOPER & SCULLY, P.C., Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

AFFIRMED

Andrew D. Schwartz, WEST, YLLA, GOSNEY, Oklahoma City, Oklahoma, for Plaintiff/Appellant

George S. Corbyn, Jr., CORBYN, HAMPTON, BARGHOLS, PIERCE, PLLC, Oklahoma City, Oklahoma, for Defendants/Appellees

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 The present case concerns a law firm that previously served as defense counsel for Ronnie Keith, D.O. (Dr. Keith). That law firm subsequently served as counsel for a plaintiff in a medical malpractice suit in which Dr. Keith was a defendant. Dr. Keith did not seek disqualification of the law firm, and the malpractice suit ultimately settled. Dr. Keith has now filed this suit against that law firm alleging various theories of recovery stemming from the law firm representing the plaintiff in the malpractice action despite allegedly having a conflict in the form of confidential information obtained from Dr. Keith. Dr. Keith appeals from the trial court's order denying his motion to reconsider the trial court's order granting summary judgment to Perry Marrs, Jr., Benjamin Butts, and Butts & Marrs, P.L.L.C. (collectively, Defendants).[1] Based on our review, we affirm.

BACKGROUND

¶2 Mr. Marrs, who had served as Dr. Keith's attorney in prior matters, entered an appearance as attorney for Dr. Keith in a case filed against him in 2009. The plaintiff in the 2009 case -- a nurse -- alleged that Dr. Keith committed an assault and battery against her.

¶3 Mr. Marrs asserts that in June 2012, he "sent a letter to Dr. Keith stating that he would be required to withdraw as Dr. Keith's counsel in the [2009] case because Dr. Keith had not paid the retainer or communicated with Mr. Marrs about settlement." An order allowing Mr. Marrs to withdraw as counsel in the 2009 case was filed on July 5, 2012.[2] As stated by Dr. Keith, the 2009 case was later "dismissed by the plaintiff without any further meaningful legal work and without settlement."

¶4 In 2011, a separate medical malpractice action was filed. In the 2011 case, the plaintiff sought damages for medical negligence that allegedly occurred in January 2011 when the plaintiff underwent gastric bypass surgery. Dr. Keith was not named as a defendant in the original petition, but was named as a defendant in the amended petition filed in February 2012. The plaintiff in the 2011 case was originally represented by attorney Jason Ryan; however, as stated by Defendants, "[i]n August 2012 [Mr.] Butts advised [Mr.] Marrs that Jason Ryan had asked Mr. Butts if Mr. Butts could get involved representing the plaintiff in the [2011] case[.]" According to Defendants, Mr. Marrs and Mr. Butts "conferred" at that time and "concluded that they could get involved in representing the plaintiff in the [2011] case" which named Dr. Keith as a defendant "because Dr. Keith was a former client in the [2009] case and the [2009] case was completely unrelated to the [2011] case."

¶5 Dr. Keith asserts that the August 2012 conversation between Mr. Marrs and Mr. Butts "was not the first such discussion they had regarding the topic," and he points out that in Mr. Butts' interrogatory responses Mr. Butts admits that "he first heard about the [2011] case in January 2012" -- several months prior to Mr. Marrs withdrawing from representation of Dr. Keith in the 2009 case -- "when [Mr. Butts] was contacted by Jason Ryan who was representing the plaintiff and inquired if [Mr.] Butts could get involved." Dr. Keith also asserts that although the two cases are not "the same," they are "'substantially related' for purposes of determining potential conflicts under Rule 1.9, Oklahoma Rules of Professional Conduct,"[3] and he asserts "Defendants gained information as a result of representing Dr. Keith in the [2009] case, and in prior cases, that would be useful and relevant to the handling of the [2011] case," "including talking to Dr. Keith about the [2011] case while he was still their client[.]"[4]

¶6 Nevertheless, the parties agree that on October 18, 2012, Mr. Butts and Mr. Marrs entered their appearance for the plaintiff in the 2011 case, that Dr. Keith was represented by other counsel in the 2011 case, and that "Dr. Keith never filed a Motion to Disqualify against [Mr.] Butts, [Mr.] Marrs or Butts & Marrs, P.L.L.C. in the [2011] case which Dr. Keith ultimately settled."

¶7 In October 2014, Dr. Keith filed the present action against Defendants. In Dr. Keith's amended petition, he sets forth theories against Defendants of breach of fiduciary duty, professional negligence/legal malpractice, false representation/deceit, and intentional infliction of emotional distress.

¶8 In January 2018, Defendants filed a motion for summary judgment asserting that

for two separate reasons Defendants are entitled to summary judgment. First, as a matter of law, a lawyer is free to represent a client adverse to the lawyer's former client in an unrelated matter. Second, Dr. Keith failed to file a motion to disqualify Defendants in the [2011] case, and Dr. Keith is therefore precluded as a matter of law from pursuing this malpractice case.

¶9 At the hearing on the motion for summary judgment, the trial court stated that "these types of fact patterns" in which an attorney represents a new client that is suing the attorney's former client "just at first blush aren't the easiest for this Court to digest"; however, the court emphasized that "there was nothing done to disqualify the firm of Butts & Marrs in the [2011] case." The court stated, "I just think that is a prerequisite." In its order filed on April 20, 2018, the trial court sustained Defendants' motion for summary judgment.

¶10 On April 30, 2018, Dr. Keith filed a motion to reconsider, stating that "[t]he entire reputation of the legal profession, as well as the sanctity of the client's ability to trust their attorney is at stake." He asserted there could be no waiver based on a failure to seek disqualification of Defendants in the 2011 case because "there was no fully informed waiver[.]" Nevertheless, he acknowledged that

When Dr. Keith found out that [Defendants], his former lawyers, were suing him, he told [his counsel in the 2011 case]. . . . The summary judgment evidence shows [his counsel in the 2011 case] told Dr. Keith there was nothing she could do, and did not move to disqualify Defendants.

Dr. Keith states in his affidavit that his counsel in the 2011 case "advised me . . . it was allowed and that there was nothing that could be done about it." Dr. Keith asserted, however, that

waiver requires full knowledge and understanding of the facts and rights waived. Taking the facts in Dr. Keith's favor, he is a layperson and does not know or understand his rights, over and above the fact that he does not like his former lawyers suing him. He clearly did not understand, as a matter of law, what he was waiving, so cannot form the intent to waive that right in his mind for summary judgment purposes.[5]

¶11 In its order filed on July 30, 2018, the trial court denied Dr. Keith's motion to reconsider. Dr. Keith appeals.

STANDARD OF REVIEW

¶12 As explained by a separate division of this Court:

Absent some pure error of law, the trial court's ruling on a motion to reconsider will not be disturbed unless affected by an abuse of discretion. . . . Where, as here, the assessment of the trial court's exercise of discretion in denying a motion to reconsider depends on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness. Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.3d 100 . . . .

Waldrop v. Hennessey Utilities Auth., 2014 OK CIV APP 106, ¶ 7, 348 P.3d 213. "Summary judgment is proper only when it appears that there is no substantial controversy as to any material fact, and that one of the parties is entitled to judgment as a matter of law." Seitsinger v. Dockum Pontiac Inc., 1995 OK 29, ¶ 7, 894 P.2d 1077 (citation omitted). See also 12 O.S. 2011 § 2056(C).

ANALYSIS

¶13 Defendants state that "Oklahoma does not yet appear to have decided a malpractice case based upon the client's failure to move to disqualify the attorney," but assert that "Oklahoma has held that a client waives his objection to his former attorney's representation by failing to file a motion to disqualify objecting to the adverse representations by his former attorney." Defendants cite to Deupree v. Garnett, 1954 OK 110, 277 P.2d 168, which they summarize as holding, in part, that a "client could not defend a suit for attorney's fees on the grounds that his attorney abandoned employment by representing a conflicting party, where [the] client was aware of his attorney's adverse representation and did not object."

¶14 Deupree was cited by the Oklahoma Supreme Court in State ex rel. Howard v. Oklahoma Corporation Commission, 1980 OK 96, 614 P.2d 45. The Howard Court noted that other courts have stated that the "rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties," but further stated: "This Court has held to a similar effect in two cases[, including Deupree,] but excused the attorney in each instance because the point was not timely presented." Howard, ¶ 23 n.6 (emphasis added).[6] The Howard Court indicated that the rule against representing conflicting interests exists alongside other rights and interests, including "the right to be represented by counsel . . . whose views are consonant with one's own or who at least will present the client's interests." Id. ¶ 23.

¶15 Defendants also cite to Hayes v. Central States Orthopedic Specialists, Inc., 2002 OK 30, 51 P.3d 562, a case which is particularly illuminating because Dr. Keith's primary contention is that Defendants obtained confidential factual information during their representation of Dr. Keith that materially advanced their client's position in the 2011 case.[7] In Hayes, an employee who "worked as a secretary" resigned from her employment for two attorneys who were representing a doctor in litigation between that doctor and an orthopedic center. Soon after her resignation, the secretary began working for a lawyer who worked for the law firm that was representing the opposing party -- the orthopedic center -- in that litigation. Eight months after the secretary's resignation, the two attorneys representing the doctor sent a letter to the law firm representing the orthopedic center requesting that the law firm withdraw from the case. One month later, the doctor filed a motion in the case asking the trial court to require the law firm representing the orthopedic center to withdraw on the basis that, according to the doctor and his counsel, the secretary "worked on documents [while working for the doctor's counsel] containing attorneys' work product and was 'intimately familiar' with documents relating to settlement negotiations between the parties." Hayes, ¶ 2. The trial court granted the doctor's motion and disqualified the opposing law firm from any further representation of the orthopedic center in the litigation.

¶16 On appeal, the Oklahoma Supreme Court concluded, in pertinent part, that the trial court erred when it declined to find that the doctor had waived his claim that the orthopedic center's law firm should be disqualified. Id. ¶¶ 6-7. The Court stated: "It is our view that the trial court erred in holding that [the doctor] had not waived his right to seek the disqualification of [the opposing law firm] by waiting eight months to raise the issue." Id. ¶ 8 (emphasis added).

¶17 Similar to the Howard Court's emphasis that a client should ordinarily be allowed to choose its counsel and obtain counsel "whose views are consonant with [the client's] or who at least will present the client's interests," the Hayes Court stated as follows:

We begin our discussion of this issue by observing,

Legal practitioners are not interchangeable commodities. Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.

Hayes, ¶ 9 (citation omitted). In Arkansas Valley State Bank v. Phillips, 2007 OK 78, 171 P.3d 899, the Oklahoma Supreme Court similarly stated:

An individual's decision to employ a particular attorney can have profound effects on the ultimate outcome of litigation. Legal practitioners are not interchangeable commodities. Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.

Id. ¶ 12 (footnotes omitted). The Hayes Court explained that, "[t]hus, the barrier a party must surmount to secure the disqualification of his opponent's counsel is high." Hayes, ¶ 9.

¶18 In fact, the Hayes Court described disqualification of opposing counsel as a "drastic measure," and explained that courts should ensure that motions to disqualify, or delays in filing such motions, "are not used for strategic purposes" or "as procedural weapons." Id. ¶ 10 (footnote omitted). The Hayes Court explained that "disqualification is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result from failing to invoke it." Id. See also Jensen v. Poindexter, 2015 OK 49, ¶ 11, 352 P.3d 1201 ("A litigant has a fundamental right to be represented by counsel of his or her choice," but "a litigant's right to choose his or her counsel is not absolute and may be set aside under limited circumstances, where honoring the litigant's choice would threaten the integrity of the judicial process." (internal quotation marks omitted) (citations omitted) (footnote omitted)).

¶19 The Hayes Court emphasized that the doctor in that case and his counsel "discussed what to do about the fact [that the secretary] was going to work for the firm that was representing [the orthopedic center] but decided to take no action whatever for eight months," Hayes, ¶ 11, and took no action despite the fact that there was a great deal of activity in the case during those eight months in the form of "intense settlement negotiations between the parties," the filing of an amended petition and a second amended petition by the doctor, the filing of an answer and counterclaim by the orthopedic center, and "extensive discovery requests," id. ¶ 3.

¶20 Regarding the eight-month delay prior to seeking disqualification, the doctor cited to a decision of the United States Court of Appeals for the First Circuit -- Kevlik v. Goldstein, 724 F.2d 844 (1st Cir. 1984) -- and the Hayes Court agreed that the Kevlik Court "noted, correctly, that delay alone would not necessarily prejudice the non-moving party." Hayes, ¶ 13. The Hayes Court further stated: "Here, however, [the doctor and his counsel] remained silent about the disqualification issue during a period of intense settlement negotiations followed by an exchange of pleadings, all of which required [the opposing law firm's] continuing deep involvement in the case and for which [the orthopedic center] had to pay." Id. The Hayes Court concluded that "[the doctor] waived any right he might have had to disqualify [the opposing law firm]," and was "satisfied that [its] decision declining to disqualify [the opposing law firm] does not threaten the integrity of the judicial process."

Id. ¶ 14 (internal quotation marks omitted) (citation omitted).

¶21 More recently, the Oklahoma Supreme Court has explained:

While disqualification of counsel is a drastic measure, it is used when necessary to preserve the integrity of the judicial process. The standard for disqualifying counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. This is a high standard to meet and the burden rests with the moving party to establish the likelihood of such harm by a preponderance of the evidence. If disqualification is to be based on an alleged conflict of interest or improper possession of confidential information, then we have required the trial court to hold an evidentiary hearing and make specific findings that the attorney whose disqualification is sought had knowledge of material and confidential information.

Miami Bus. Servs., LLC v. Davis, 2013 OK 20, ¶ 12, 299 P.3d 477 (footnotes omitted). See also McGee v. Amoco Prod. Co., 2019 OK 7, 438 P.3d 355 (mem.). The Davis Court also stated that a determination that a counsel should have been disqualified which is made only after a case has concluded would "result[] in an unjustified waste of judicial resources and taxpayer dollars." Id. ¶ 13. The Court stated: "This Court has a long history of rejecting the unnecessary waste of judicial resources." Id. ¶ 16 (footnote omitted).

¶22 In the present case, it is undisputed that Dr. Keith altogether failed to seek disqualification of Defendants in the 2011 case, a case which ultimately settled. Had Dr. Keith sought disqualification of Defendants in the 2011 case (and if Defendants refused to withdraw), an evidentiary hearing would have been required to have been held in that proceeding to determine whether Defendants "had knowledge of material and confidential information" relevant to the 2011 case.
Id. ¶ 12.

Before the trial court can determine that an attorney should be disqualified based on conflict of interest or improper possession of confidential information, it must hold an evidentiary hearing and make a specific factual finding in its order of disqualification that the attorney had knowledge of material and confidential information. This evidentiary hearing is required before any decision on whether to disqualify the attorney can be made.

Id. ¶ 19 (footnotes omitted). Having failed to move for disqualification in the 2011 case, Dr. Keith now essentially seeks a trial, after the fact, on this very issue. Essential to his theories of recovery in his amended petition is his allegation that Defendants "received a wealth of intimate and confidential personal and professional information from Dr. Keith . . . and used that to their economic benefit and to the detriment of Dr. Keith" in the 2011 case -- i.e., that Defendants "obtain[ed] confidential information from Dr. Keith as his defense attorneys, and then us[ed] such confidential information to their benefit" in representing the plaintiff in the 2011 case. Dr. Keith asserts, in essence, that Defendants should never have represented the plaintiff in the 2011 case, and he bases all of his theories on the fact that Defendants nevertheless inappropriately served as counsel for the plaintiff.

¶23 In support of his argument, Dr. Keith cites to Prospective Investment & Trading Company, Ltd. v. GBK Corporation, 2002 OK CIV APP 113, 60 P.3d 520, but admits that in that case "the plaintiff had sought disqualification of the defendant law firm who had represented another party against the plaintiff and had formerly represented the plaintiff[.]" In fact, in that case the Court explained that the moving party "sought to disqualify [a law firm] from representing [the opposing party] in the instant lawsuit due to [a] conflict of interest. After a full two day evidentiary hearing on the merits and substantial briefing by the parties, the district court entered a . . . well-reasoned and thoroughly researched order,"
id. ¶ 7, in which it

addressed several competing considerations: balancing [the opposing party's] interest in retaining counsel of its choice against [the moving party's] concern for protection of its confidential information; protecting and upholding the attorney-client relationship and protecting an attorney who is representing a current client against a former client from being accused of wrongdoing; preventing the potential misuse of the disqualification motion as a litigation tactic; and protecting and preserving the attorney-client relationship and client confidences.

Id. ¶ 8. In the present case, by contrast, Dr. Keith failed to seek disqualification of Defendants in the 2011 case, and the parties in the 2011 case were provided with no such opportunity in that action to resolve the fundamental issue which Dr. Keith now seeks to litigate in this new action.

¶24 We conclude Dr. Keith waived this fundamental issue by failing to move for disqualification in the 2011 case.[8] As stated by the trial court, "We might not be here today if that had been done then." Dr. Keith asserts that he did not have full knowledge and understanding of the facts and rights waived because, in essence, he was provided with, and followed, what he clearly now views as faulty legal advice from his attorney at the time. However, it is undisputed that certain key events, including Dr. Keith's alleged conversations regarding the 2011 case with Defendants prior to Mr. Marr withdrawing as Dr. Keith's counsel in the 2009 case, and Dr. Keith being made aware in October 2012 that Defendants "were representing the plaintiff in the [2011] case against [him]," occurred either prior to or during the pendency of the 2011 case. Dr. Keith even admits he discussed with his counsel during the pendency of the 2011 case whether "it was permissible" for Defendants, who formerly served as his counsel, to represent the plaintiff in the 2011 case, and he admits his counsel advised him that "there was nothing that could be done about it." We are not persuaded by Dr. Keith's argument that he, or his counsel at the time, lacked sufficient knowledge and understanding of the facts to excuse their failure to seek disqualification based on a potential conflict.[9]

¶25 Thus, we conclude that in failing to timely seek disqualification of Defendants in the 2011 case, Dr. Keith not only waived the issue of disqualification but also waived his ability to assert theories of recovery based entirely on his assertion that Defendants improperly represented the plaintiff in the 2011 case. Dr. Keith states in his response to the motion for summary judgment that Defendants improperly represented the plaintiff in the 2011 case, that Defendants, in representing that plaintiff, represented "someone whose interests are materially adverse to [a] former client," and that Defendants violated the Oklahoma Rules of Professional Conduct because the 2011 case was "a substantially related matter" under Rule 1.9 of the Oklahoma Rules of Professional Conduct. Dr. Keith argues that a comment to Rule 1.9 "clearly sets forth that . . . knowledge" of the type he asserts Defendants obtained from him "would create a conflict that should have prevented Defendants from representing [the plaintiff in the 2011 case]." These issues clearly would have been resolved had a motion to disqualify been timely filed.

¶26 Dr. Keith further asserts that a breach of fiduciary duty by a lawyer "may give rise to liability to a client, independent of any legal malpractice or ethical rules," but, once again, the basis of this theory, like the basis of his deceit and intentional infliction of emotional distress theories, is that Defendants improperly represented the plaintiff in the 2011 case. Dr. Keith waived any objection to this underlying occurrence, and in waiving objection to Defendants' representation of the plaintiff in the 2011 case, we conclude Defendants' representation of the plaintiff in the 2011 case is unavailable as a basis for the theories asserted in the present action, theories which are founded upon the existence of Defendants' representation to which Dr. Keith is deemed to have consented.[10]

¶27 Consistent with the Oklahoma Supreme Court's "long history of rejecting the unnecessary waste of judicial resources," Davis, 2013 OK 20, ¶ 16, and consistent with the interest of preserving the integrity of the judicial process, which was not questioned in the 2011 case in the form of a motion for disqualification, we conclude the trial court properly entered summary judgment in favor of Defendants.

CONCLUSION

¶28 We affirm the trial court's order denying Dr. Keith's motion to reconsider the trial court's order granting summary judgment to Defendants.

¶29 AFFIRMED.

WISEMAN, V.C.J., and RAPP, J., concur.

FOOTNOTES

[1] According to the docket sheet in the appellate record, the other named Defendants in this action were dismissed without prejudice in 2017.

[2] Mr. Marrs filed his motion to withdraw as counsel for Dr. Keith on June 18, 2012. Dr. Keith asserts, however, that he "did not receive any letters from Defendants regarding their motion to withdraw or the order allowing withdrawal."

[3] 5 O.S. 2011, ch. 1, app. 3-A.

[4] (Emphasis omitted.)

[5] Dr. Keith also asserted that Defendants "caused [Dr. Keith] to be sued, trumped up a bogus excuse to withdraw, joined the lawsuit against Dr. Keith, and managed to stuff their pockets with $242,177.56 as a result." In support of these particular assertions, Dr. Keith cited only to the following statement in Mr. Butts' interrogatory responses: "[T]he law firm of Butts & Marrs, P.L.L.C. earned $242,177.56 in fees in the [2011] case."

[6] The other of the two cases to which the Court referred is Suttle v. Chadwell, 1945 OK 356, 164 P.2d 880.

[7] Dr. Keith states in his affidavit that prior to Mr. Marrs' withdrawal from the 2009 case, Dr. Keith "had numerous discussions with him about information concerning the [2011] case as well as other issues such as personal information concerning my financial information and asset management, as well as my personal medical history."

[8] Waiver is defined as "[t]he voluntary relinquishment or abandonment -- express or implied -- of a legal right or advantage[.]" Black's Law Dictionary (11th ed. 2019).

[9] Dr. Keith states elsewhere that

Defendants have failed to meet their burden to prove as a matter of law that Dr. Keith knowingly chose not to file a Motion to Disqualify them from representing [the plaintiff in the 2011 case], nor that he was aware that such representation constituted a conflict that would have supported such disqualification[.]

(Emphasis in original.) Dr. Keith also states "he did object as soon as he found out about it, but that [his counsel in the 2011 case] told him that it was permissible[.]" (Emphasis in original.) Dr. Keith attempts to separate his knowledge from that of his lawyer in the 2011 case, claiming personal ignorance as to the legal issues and consequences. However, "while [a] lawyer continues to hold the status as counsel of record, it is the lawyer alone who holds the position of magister litis -- the master of the client's litigation." Watson v. Gibson Capital, L.L.C., 2008 OK 56, ¶ 8, 187 P.3d 735 (footnote omitted). "Clients possess unlimited power to discharge a lawyer," id., but until that occurs, "a party who is represented by an attorney of record will not be recognized by the court as an actor in propria persona in the conduct of his own case," id. ¶ 9. Any complaint regarding the legal services provided to Dr. Keith during the 2011 case would need to be directed at Dr. Keith's counsel in the 2011 case and is not material to our analysis here.

[10] In addition to the Oklahoma cases discussed above, see Grant v. Thirteenth Court of Appeals, 888 S.W.2d 466, 468 (Tex. 1994) (A party that fails to seek disqualification in a timely manner waives any complaint regarding the representation.); NCNB Texas Nat. Bank v. Coker, 765 S.W.2d 398, 399 (Tex. 1989) ("A motion to disqualify counsel is the proper procedural vehicle to challenge an attorney's representation . . . ."); In re Estate of Gillies, 830 So. 2d 640, 649 (Miss. 2002) (Where "the potential conflict was apparent early on in the action," and the complaining party was "at all times represented by separate counsel who failed to object to the conflict," that party "is not to be permitted to hold [the] issue in reserve for tactical purposes until it would be most helpful to its position," and it "waived this issue by failing to seek . . . disqualification when the conflict became apparent."); Wilbourn v. Stennett, Wilkinson & Ward, 687 So. 2d 1205, 1217 (Miss. 1996) ("The client cannot hold the right in reserve for tactical purposes until it would be most helpful to his position. Failure to move for disqualification at the earliest practical opportunity will constitute a waiver." (citation omitted)); Tr. Corp. of Montana v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir. 1983) ("[T]he former client may expressly or impliedly waive his objection and consent to the adverse representation," and "[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right."); Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978) ("This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed," and a litigant who fails to timely object "waive[s] their right to object to the hiring of [that counsel].").






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 113, 60 P.3d 520, THE PROSPECTIVE INVESTMENT AND TRADING COMPANY, LTD. v. GBK CORPORATION
Discussed
 2014 OK CIV APP 106, 348 P.3d 213, WALDROP v. THE HENNESSEY UTILITIES AUTHORITY
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1954 OK 110, 277 P.2d 168, DEUPREE v. GARNETT
Discussed
 1945 OK 356, 164 P.2d 880, 196 Okla. 298, SUTTLE v. CHADWELL
Discussed
 2002 OK 30, 51 P.3d 562, HAYES v. CENTRAL STATES ORTHOPEDIC SPECIALISTS, INC.
Discussed
 1995 OK 29, 894 P.2d 1077, 66 OBJ 1120, Seitsinger v. Dockum Pontiac Inc.
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 2007 OK 78, 171 P.3d 899, ARKANSAS VALLEY STATE BANK v. PHILLIPS
Discussed
 2008 OK 56, 187 P.3d 735, WATSON v. GIBSON CAPITAL, L.L.C.
Discussed
 2013 OK 20, 299 P.3d 477, MIAMI BUSINESS SERVICES, LLC v. DAVIS
Discussed at Length
 2015 OK 49, 352 P.3d 1201, JENSEN v. POINDEXTER
Discussed
 1980 OK 96, 614 P.2d 45, State ex rel. Howard v. Oklahoma Corp. Commission
Discussed
 2019 OK 7, 438 P.3d 355, MCGEE v. AMOCO PRODUCTION CO.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2056, Motion for Summary Judgment
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA